## PALMER BRICK COMPANY *v.* CHENALL.

1. The maxim res ipsa loquitur is applicable, under certain circumstances, in suits by a servant against his master for damages resulting from the master's negligence.　SIMMONS, C. J., dissenting.
2. The maxim is, however, rarely applicable in such cases, and only where the manner of the occurrence producing the injury, or the attendant circumstances are such that the jury may reasonably infer that the occurrence could not have taken place unless the master was lacking in diligence as to instrumentalities, place of work, or fellow-servants.
3. Whether such an inference shall be drawn is a question exclusively within the province of the jury, who are to determine whether the circumstances are such as to authorize the inference ; and the circumstances must show that the occurrence was of such an unusual and extraordinary character that an inference of negligence would arise which would overcome the presumption of law in favor of the master, that he had furnished proper instrumentalities, a safe place to work, and competent fellow-servants.
4. In any case the inference is slight, and especially is this true where the suit is by a servant against his master ; and the jury should disregard the inference in every case where there is the slightest evidence which would either adequately explain the happening of the occurrence upon some other theory than the negligence claimed, or which would satisfy the minds of the jury that the master was not negligent, notwithstanding the explanation of the master does not sufficiently account for the occurrence itself.
5. A petition claiming damages for negligence, which contains only general allegations of negligence, will be dismissed on special demurrer, unless so amended as to set forth one or more specific acts of negligence.
6. It follows from the foregoing that when a petition sets forth general allegations of negligence, which are followed by an averment of a specific act of negligence, there can be no recovery by the plaintiff unless the specific act of negligence is established to the satisfaction of the jury.
7. In a suit of the character above indicated, evidence of the circumstances attending the transaction which resulted in the injury, and constituting the res gestæ of the occurrence, may be properly admitted, although such evidence may show other acts of negligence on the part of the defendant than the one alleged.　But such evidence will not authorize a recovery unless the specific act of negligence alleged is established to the satisfaction of the jury.

Argued March 8, — Decided March 30, 1904.

Action for damages.　Before Judge Reid.　City court of Atlanta.　July 3, 1903.

The following is added in connection with the statement of facts in the opinion.　Both parties excepted to the following remarks

made by the judge in the hearing of the jury: "I will state at this point what I understand this case to be, under the Supreme Court ruling. The case is based on the proposition that the master sent his servant into an unsafe place to work. If sustained, of course that would make the master liable. Now the question to go to the jury, and it involves, as I understand, your objection on one branch of it, whether this was an unfinished common enterprise in which all the servants were engaged, or whether this was a new enterprise, and the servant was sent into a finished place to do work; and if he was sent into a place of danger and into a finished place that was dangerous, then it is competent to show by evidence that it was dangerous from any reason, whether the danger resulted from faulty construction or otherwise. Whether in the want of skill in the man or men who put it up, or for any other reason, it becomes dangerous, I think it is admissible."

The defendant excepted to the admission of the following testimony of a witness for the plaintiff: "I worked on several kilns before; and when the arches are put up and the posts are all set, the posts are screwed up tight to the wall, and in this arch they unscrewed them to let them off, and they could not get them up tight any more. The posts were too short, and they had to slacken them off to get a course of brick in the arches under the rods, and the rods come right down on the center, and, like I say, the rods had to be slackened up to let the brick in; and after we got the center keyed up, they tightened the rods up on them. This sprung the arch, and when it is sprung it will fall. This, in my judgment, is why it fell." This was objected to on the ground that it went out side of the declaration as to the reason why the arch fell.

The defendant excepted to the following charge to the jury: "If you believe the plaintiff was in the employ of the defendant, and that the master sent him into a place to work which was unsafe, and if you believe that in doing so the master failed, in the exercise of ordinary care, in the discharge of its duty to furnish the servant a reasonably safe place, and was guilty of negligence, and by such negligence, if you find any existed, the servant was injured, the master would be liable and the servant could recover, unless barred of his right of recovery by his own conduct. . . Now when you come to pass on this question you pass on it like any other question of fact; you take into consideration all of the

circumstances, all of the facts, all of the surroundings, the situation and character of all the alleged kiln, its construction, all about it, and determine whether the kiln was safe, and, if it was not safe whether the master knew or, in the exercise of ordinary care, should have known it. You will determine whether in fact there was any negligence in the construction of the kiln or its maintenance. If it was a place reasonably safe, and if it was constructed and maintained reasonably safe without negligence on the part of the master, there would be no liability, although it may have fallen from some cause." The errors assigned were, that this did not correctly state the master's duties under the pleadings and the evidence; and that it submitted to the jury a different cause of action from that alleged in the declaration, and failed to limit the right of recovery to the specific act of negligence charged as causing the arch to fall.

The defendant excepted to the following charge: "In passing on this question the law is, where no explanation is given as to the cause of the falling of the brick arch, the jury may infer a want of ordinary care from the mere happening of the occurrence; and the jury may infer that there was negligence on the part of the owner either in its original construction or subsequent maintenance." The errors assigned were, that this was not law, and, if law, was not applicable to this case, the plaintiff having alleged and offered evidence to prove the cause of the fall of the arch.

Both parties excepted to the following charge: "The master is not liable to one servant for injuries caused by the negligence of a fellow-servant, that is by another servant engaged with the servant in the same common job and work; and if you believe from the evidence that this was one job of work, and it was in the course of construction, and it was a continuous pending job, and the end to be reached was the erection of the kiln, the completion of it as one single structure, then those engaged in work upon it would be fellow-servants, and the defendant would not be liable for any injury that happened to any one servant, due to the negligence of any one servant engaged in the work." The errors assigned by the defendant were, in giving an instruction not authorized by the pleading; and in leaving to the jury, as a question of fact, whether the end to be reached was the completion of the kiln as a single structure. Like assignments of error were made on the following

charge: "The plaintiff insists that this work was done in sections, the work of repairing the kiln was done in sections, and that the completion of one end of it was a job within itself and the work on the other end was a job within itself, and that the work on which the plaintiff was engaged at the time of his injury had no relation to the work which had been done, the crowning of the half of the entire kiln, which had already been done."

Both parties excepted to the following charge: "If you believe that it was not a common job, not a continuous pending common enterprise, but half of the kiln had been completed and ended, then the master would not be relieved from the liability to furnish the servant a reasonably safe place in which to work; and if it sent him into that part of the kiln already completed, and if you believe it was unsafe and negligently unsafe, and, under the instructions already given you, the master was negligent, the master would not be relieved from liability, even if you should conclude that the negligence which caused the kiln to fall, if the kiln fell from negligence, was in fact the negligence of a servant, one of the fellow-servants with the plaintiff in this case; the law being that as to the duty of the master he is still bound for its exercise, although he may depute its real performance to a fellow-servant of the party injured." The defendant assigned as error, that this was not warranted by the pleadings or the evidence; and that it left to the jury, as a matter of fact, whether or not the completion of the kiln was one common job.

The defendant assigned error upon the refusal of the judge to give to the jury certain instructions as requested, among them the following: "I charge you that there is no presumption of law that the defendant was negligent. The burden is on the plaintiff to show by a preponderance of evidence that the defendant was negligent, and that the plaintiff was free from any fault contributing in any substantial degree to the alleged injury. There is no presumption of law that the defendant was negligent, arising from mere proof that the brick fell."

The plaintiff assigned as error an instruction that if the jury found that he voluntarily went under the end of the kiln for a purpose of his own, not connected with the actual duty he owed to his master, and that no duty in the discharge of which he was engaged called him under that end of the kiln, then the master

owed him no duty, was under no obligation to him to see that the place where he was was safe, and if it fell upon him the master would not be liable, and he would not be entitled to recover.

While the judge was charging the jury a juror asked: "Are we to decide whether Charlie Montgomery was a fellow-servant of the plaintiff?" The judge answered: "Upon that point I charge you that if Charlie Montgomery was engaged in the actual work which the other servants were engaged in, although he may have had in some measure direction of the work, he would be, under the law, a fellow-servant with the other servants engaged in the work." The plaintiff assigned this as error.

*Smith, Hammond & Smith*, for Palmer Brick Company.
*Burton Smith* and *George Gordon*, contra.

COBB, J. This is the second appearance of this case. See *Chenall* v. *Palmer Brick Company*, 117 *Ga.* 106. At the last trial the plaintiff recovered a verdict, and now the defendant complains that the court erred in refusing to grant it a new trial.

1-4. When the case was here before, there was a distinct ruling to the effect that the maxim res ipsa loquitur would be applicable in an action by a servant against a master. While we are aware that this is a proposition upon which the courts are not by any means agreed, and the older rulings are generally to the contrary, still there are many decisions by American courts holding that, under given circumstances, this maxim is applicable in cases of the character referred to, and the trend of American authority seems to be now in that direction, even if the current is not already that way. See 2 Labatt's Master & Servant, § 834, and cit. in note 8. While the maxim is applied with great caution in any class of cases, greater caution must be exercised in determining its application in a suit by a servant against a master, on account of the burden resting upon the servant as well as the presumptions which exist in favor of the master. A servant who sues his master for damages on account of alleged negligence takes upon himself the burden of showing, not only due care on his own part, but also that the master was negligent. Except in a case where the master sued is a railroad company, the servant can not, under any circumstances, call to his aid any presumption of law which will have the effect to relieve him from establishing

the existence of negligence by proof of facts requisite for that purpose. On the other hand, the master has in his favor two presumptions of law: first, that he has discharged his full duty to his servant in regard to instrumentalities, place of work, and fellow-servants ; and, second, that the servant has assumed all of the usual and ordinary hazards of the business. Before the servant can recover he must overcome, by proof of the facts necessary for that purpose, these two presumptions that the law raises in favor of the master. The servant is required to prove negligence, but he may carry this burden of proof which the law imposes upon him like any other litigant, and may satisfy the requirements of the law either by direct or circumstantial proof. If he can, by the proof of a series of circumstances, establish that he has exercised due care, and that the master was negligent, he may rely upon the circumstances for a recovery, even in the absence of any direct proof on the subject of his own conduct or that of his master. The maxim res ipsa loquitur is simply a rule of evidence. The general rule is that negligence is never presumed from the mere fact of injury, yet the manner of the occurrence of the injury complained of, or the attendant circumstances may sometimes well warrant an inference of negligence. It is sometimes said that it warrants a presumption of negligence; but the presumption referred to is not one of law but of fact. It is, however, more correct and less confusing to refer to it as an inference rather than a presumption ; and not an inference which the law draws from the fact, but an inference which the jury are authorized to draw; and not an inference which the jury are compelled to draw. In the trial of an action by a servant against a master, when it has been shown that the servant was in the exercise of due care, and the manner of the injury or the attendant circumstances are such that injury could not have resulted unless the master had been negligent in some respect in which the law required him to be diligent for the servant's safety, then the jury might be authorized to infer that the master had been negligent in respect of the matter which was the basis of the suit, and would be authorized to base a finding upon such an inference, in the absence of an explanation which would be satisfactory to them ; and it is not necessary that this explanation should satisfy them as to the cause of the injury, but an explanation which satisfies them sim-

ply that the master has exercised all the diligence which the law requires of him would be sufficient to rebut the inference of negligence resulting from the happening of the occurrence, although the cause thereof might still be involved in unsolvable mystery.

Under our system, where every question of negligence is left for determination by the jury, even in cases where the maxim under consideration is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved, and it is for them to consider whether the manner of the occurrence and the attendant circumstances are of such a character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence on the part of the master had been exercised. And they should also be instructed, that, while they are not required by the law to draw any inference of negligence from the matter, still it is within their province to determine whether the circumstances are such that such an inference might be properly drawn. If in a given case the jury see proper to draw an inference of negligence from the manner of the occurrence or the attendant circumstances, the drawing of this inference is not necessarily to result in a finding in favor of the plaintiff. It imposes upon the jury the duty of making further inquiry as to whether this inference has been overcome by a satisfactory explanation. If the jury have drawn the inference of negligence, and there is evidence which satisfies their minds, notwithstanding such inference of negligence, that the occurrence was really brought about by the negligence of a fellow-servant, the inference is overcome, and the jury should find in favor of the defendant. So, if there is evidence that the master has fully discharged the duty which the law requires of him in reference to his servant, although he has not satisfactorily accounted for the occurrence, the inference should go for naught, and the finding should be in favor of the defendant. The application of the maxim res ipsa loquitur does not change one iota of the law of master and servant, but simply affords, in some rare cases, a means of proof to which the servant may resort to carry the burden which the law imposes upon him in a case where he sues his master for negligence. In these cases, which are of rare oc-

currence (for the maxim only applies in cases which do not ordinarily and usually happen), the maxim affords to the servant an opportunity to claim at the hands of the jury an inference drawn from facts which he may rely upon as proof of that which the law requires him to prove. ᶜ The inference is only prima facie, is generally slight, and is easily overcome.⟩ The inference should be drawn by the jury only in extreme cases, and should be disregarded by them in every case where it reasonably appears from the evidence that the master has not been guilty of negligence as to instrumentalities, place of work, or fellow-servants. The inference goes the moment it appears that a defect in machinery complained of is a latent defect that the master could not have discovered by the exercise of ordinary care. In cases like the *Nelms* case, 83 *Ga.* 70, *Railey* case, 112 *Ga.* 288, *Baxley* case, 114 *Ga.* 720, *Stewart* case, 115 *Ga.* 624, *Portner* case, 116 *Ga.* 171, and *Reynolds* case, 117 *Ga.* 47, which were cases in which the defect was latent and the master could not have discovered it by the exercise of ordinary care, or the defect was patent and the servant had equal means with the master of ascertaining the same, the maxim res ipsa loquitur could have no application. In the case of *Keith* v. *Iron Company*, 81 *Ga.* 49, which involved the falling of an arch, the maxim res ipsa loquitur might or might not have been applicable, according to the circumstances existing at the time of the fall; but even if applicable, it would not in that case have availed the plaintiff, for the reason that if the inference of negligence arose it was immediately removed when the fact appeared that the plaintiff was injured as the result of the negligence of a fellow-servant.

5–7. A petition claiming damages for negligence, which contains merely general allegations of negligence, is subject to special demurrer, and, upon the hearing of such a demurrer, should be dismissed unless so amended as to set out one or more specific acts of negligence. *Russell* v. *Central Ry. Co.*, 119 *Ga.* 705. It would follow from this, that if a petition sets forth general allegations of negligence, followed by allegations setting forth specific acts of negligence, the plaintiff is not entitled to recover unless it be shown to the satisfaction of the jury that the defendant has been negligent in one, or more of the particulars alleged. What would be the right of the plaintiff if the defendant should see proper to go to trial upon a petition which contained mere general

allegations of negligence, with no specific act of negligence set forth therein, is not material to the present discussion. Without reference to that question, it is certain that if the plaintiff alleges a specific act of negligence, no recovery can be had unless this act of negligence is established, without reference to other averments of negligence in the petition which are general in their nature. *Georgia R. Co.* v. *Oaks,* 52 *Ga.* 410 (5); *Central R. Co.* v. *Nash,* 81 *Ga.* 581 (2); *Central R. Co.* v. *Hubbard,* 86 *Ga.* 624 (4). While all the circumstances of the transaction under investigation, which constitute the res gestæ of the occurrence, are admissible in evidence, and in this way evidence of acts of negligence not alleged may be received for consideration by the jury, still this is solely for the purpose of determining whether any of the specific acts of negligence alleged in the petition have been established. No matter how much evidence there may be of acts of negligence admitted under the operation of this rule, there can be no lawful recovery unless one or more of the specific acts of negligence set forth in the petition have been established to the satisfaction of the jury. The other acts of negligence admitted as a part of the res gestæ of the transaction may be looked to to throw light on the question as to whether the specific acts of negligence relied on have been established; but no matter how well established such other acts may be, the jury are not authorized to find in favor of the plaintiff unless at least one of the specific acts alleged has been proved to their satisfaction. *Atlanta St. R. Co.* v. *Walker,* 93 *Ga.* 462.

In the present case the petition alleged that the plaintiff was under the direction of one Montgomery, a boss in the employment of the defendant, "who ordered him to assist in the repair of a brick kiln." He "was directed to go inside of the kiln, which was undergoing repairs, to get certain bricks which were therein, and carry them to the masons, who were at work on the outside of the said kiln." While at work within the kiln the top of the same fell upon plaintiff, injuring him. The paragraphs of the petition which allege negligence on the part of the defendant are as follows: "(10). Defendant was negligent in this, that it furnished an unsafe place in which plaintiff was required to labor. (11). The kiln which fell upon the plaintiff was constructed in a careless and negligent and unworkmanlike manner, and was unsafe

and likely to fall at any time; and all this defendant well knew or should have known. (12). Defendant was negligent in this, that it maintained said kiln in an unsafe and dangerous condition, knowing it to be so, and in that it required plaintiff to work in such an unsafe and dangerous place. (13). The supports upon which the top or arch of the kiln had been built had been removed too soon, and time had not been allowed for the work to 'set,' and this too early removal of said supports caused the said arch to settle, crack, and fall." Paragraph 10 is simply a general allegation that the defendant was negligent in furnishing the plaintiff with an unsafe place to work. Paragraphs 11 and 12 contain no specific allegation of negligence, but are simply general averments to the effect that the unsafety of the place was the result of the carelessness and negligence of the defendant, both in the construction and maintenance. In none of the three paragraphs mentioned is there a specific act of negligence alleged either as to construction or maintenance. If the petition had contained no other allegations than these, it would have been subject to special demurrer, and would have been dismissed, unless some specific act of negligence had been alleged relating either to the construction or maintenance of the place at which the plaintiff was put to work. The only specific act of negligence alleged in the petition is in paragraph 13, which is that the supports upon which the top or arch of the kiln had been built were removed too soon and as a result of this removal the arch fell. While, under the rule above referred to, all evidence relating to the circumstances under which the arch fell would be admissible, and in this way other acts of negligence might be brought before the jury, still none of this evidence would authorize a finding in favor of the plaintiff, unless it appeared that the arch fell as a result of the supports having been removed too soon. Upon this specific act of negligence the plaintiff has seen fit to plant his case, and he can not complain if the defendant insists that the case shall be determined solely upon the issue which he has tendered. If the jury should determine that the circumstances under which the arch fell were of such an unusual nature that they would be authorized to infer that the falling was due to negligence on the part of the master, such inference would establish only prima facie that the defendant was negligent in the manner specifically alleged in the petition; and if it ap-

peared from the evidence that the falling of the arch was not due to the specific act of negligence alleged in the petition, but to something else, whether negligence or not, the inference of negligence arising from the application of the maxim res ipsa loquitur would be unavailing to the plaintiff as the basis of a recovery. The application of the maxim in cases where it may be applied will result in an inference of negligence, upon which a recovery may be based, but this inference is simply that the defendant is negligent in the respect alleged. The inference takes the place of direct proof, and as direct proof as a basis of recovery would be limited to the specific act of negligence alleged, so the inference, under the operation of the maxim, would be in like manner limited; and the moment that the jury are satisfied that the defendant is not negligent in the respect alleged, the inference of negligence resulting from the circumstances of the occurrence can no longer be looked to as the basis of a recovery.

As some of the rulings of the trial judge were not in entire accord with the views above presented, the judgment must be reversed. As some of the assignments of error are of such a character as to require a reversal on other grounds than that the evidence was not sufficient to withstand a nonsuit, we do not now express any opinion as to whether the plaintiff is entitled to recover on the evidence appearing in the present record. On the evidence as presented in the former record it was held that the jury were authorized to return a verdict in favor of the plaintiff. It is contended that the evidence in the present record is materially different from what it was before. This may be true, but we can not know that on another trial the evidence will be the same as it is in this record; and the case is, therefore, remanded to be disposed of on another trial in accordance with the law as applicable to the facts as they then appear.

In the cross-bill of exceptions complaint is made of certain instructions of the judge to the jury. As there is no special assignment of error upon any of these instructions, it is necessary to determine only whether they contain sound abstract propositions of law. Apparently they do, and we will not inquire whether they are adapted to the facts of the case.

*Judgment on main bill of exceptions reversed; cross-bill affirmed.*
*All the Justices concur.*

·, SIMMONS, C. J.    I concur in the judgment, but dissent as to the proposition stated in the first headnote.