## 1311. SINKOVITZ v. PETERS LAND COMPANY.

1. It is the duty of the owner of a building which abuts upon a public highway to use ordinary care to keep it from being a source of danger to the public after its construction, as much as it is his duty originally to see that it is not a source of danger to the public by reason of improper or unskilful construction. While the owner of a building abutting upon a public street is not an insurer of the absolute safety of those who pass upon the sidewalk, reasonable care must be exercised by him to keep it in such condition as that neither the building nor any part thereof will fall and passers by be thereby injured.

2. Where something unusual happens with respect to a defendant's property over which he has control, and by such extraordinary occurrence a plaintiff is injured (the occurrence being such as does not happen if reasonable care has been used), an inference may arise that the injury was due to the defendant's negligence. The maxim res ipsa loquitur is a rule of evidence, to be applied by the jury, if applied at all. The inference which may in some cases arise from an unexplained occurrence which has worked an injury to another, that the defendant who had in charge the instrumentality which was the direct cause of the injury was guilty of negligence, may or may not be drawn by the jury; but, like the fact of negligence or no negligence, the inference which the jury may be authorized to draw is peculiarly an inference of fact; and consequently, where the inference of negligence may as well be drawn as the inference that the casualty resulted from accident or the act of God, it is error to award a nonsuit.

(a) The maxim res ipsa loquitur is to be applied with the greatest caution, and its application depends greatly upon the circumstances of each particular case. But where the physical facts surrounding an occurrence are such as to create a reasonable probability that the occurrence—and the consequent injury—resulted from negligence, the physical facts themselves are evidential, and may or may not furnish evidence of the particular negligence alleged.

(b) If the extraordinary character of the occurrence is sufficient to raise an inference of the negligence alleged, a prima facie case is established, and the burden of disproving negligence, especially in a case where the parties do not sustain to each other the relation of master and servant, is cast upon the defendant, to disprove negligence upon his part; this for the reason that it is more particularly within his power to explain the character and condition of the instrumentality which may have occasioned injury than within the power of the injured party.

(c) In the absence of any satisfactory explanation that the occurrence was accidental or providential, or other sufficient explanation, if something unusual happens in respect to a defendant's property or to something over which he has control, whereby the plaintiff is injured, and the natural inference on the evidence is that the unusual occurrence is due to the defendant's act, the occurrence, being unusual, is said to speak for itself that such act was negligence. Bahr v. Lombard, 53 N. J. L. 233 (21 Atl. 190).

Action for damages, from city court of Atlanta—Judge Reid. May 12, 1908.

Argued October 29, 1908.—Decided March 16, 1909.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff.

*Smith, Hammond & Smith, E. M. Underwood,* for defendant.

RUSSELL, J.   The plaintiff, by her next friend, sued the Peters Land Company for injuries received from glass falling from a window in the Peters building in the city of Atlanta, Georgia. In her petition she alleged, that as she was going up certain steps on Wall street, leading to Whitehall-street viaduct (the building in question abutting on Wall street), she was struck by pieces of window-pane falling from said Peters building, by reason of which a serious and painful injury resulted to her. The defendant was charged with negligence in three particulars: (1) that the window-pane had not been properly placed or set and secured in the sash; (2) the omission to use flat sprigs to reinforce the putty, and the inferior quality of the putty which was the support of the pane of glass in the absence of the sprigs; (3) that the window-pane itself was defective and not capable of sustaining the force of the usual winds to be expected in Atlanta, and especially those to be anticipated at this particular location. Upon the trial the plaintiff offered to amend the 21st paragraph of the petition by an additional allegation of negligence, but this amendment was refused. Paragraph 21 in the original petition was as follows: "Petitioner shows that said defendant was further negligent in that said window-pane was itself defective and not capable of sustaining the force of the usual windstorms and flurries of wind to be expected in Atlanta, and especially at the place where the Peters building is located." In response to a demurrer, paragraph 21 was, by permission of the court, amended by amplifying its allegations as follows: "That said window-pane was defective in that the same was too thin and too brittle and did not have the tension required for its size; that on account of said window-pane being so thin and brittle, it was not capable of sustaining the force of the usual windstorms and flurries of wind to be expected in Atlanta and at this place. Atlanta is situated from 1,000 to 1,100 feet above the sea level, upon a ridge, where it is exposed to the windstorms and flurries that are caused by the changes in climatic conditions; that strong flurries of wind,

moving with great force, are frequent in Atlanta, and that the same come up suddenly and unexpectedly, and require window-panes of strong tension to sustain their force. The Peters building is located on one side of the railroad leading into the Union Depot, and is some eight stories high on the Wall-street side." By the amendment which was rejected by the court it was proposed to add to the 21st paragraph of the petition as amended the following: " It is adjacent to the Kimball House, which is about eight stories high. The buildings located on the south side of the railroads form a solid bank, and are three or four stories high. The buildings on Peachtree street west thereof are respectively four and sixteen stories high. The height of these buildings with the open space between, forming banks, as it were, for the currents of air, force these currents of air about and around these buildings with great force. At the southwest corner of the Peters building, and on the west and south sides thereof, on account of the conditions herein set forth, windstorms and flurries of wind are constantly to be expected, and the window-panes should be of such material, with sufficient thickness and toughness, to withstand the same. Petitioner shows that the window-pane in the window complained of was not of such thickness and toughness, and that the failure to have said window-pane of such thickness and toughness required to withstand the usual windstorms and flurries of wind was negligence on the part of the defendant. The conditions herein described existed at the time that said injury occurred."

1. We think that the court should have allowed the amendment which was offered by the plaintiff in error. The amendment was permissible either as a fit and full response to the demurrer, or as an additional ground of negligence, setting up reasons why the defendant, in the exercise of ordinary care, should have provided these windows with glass of more than ordinary thickness and toughness. We can see no reason why the learned trial judge should have rejected this amendment. It was suggested in the argument that the height of the buildings surrounding the Peters building, which created the conditions as to the windstorms and flurries alleged by the plaintiff in the proposed amendment, had been changed and increased since the original construction of the Peters building; and this being conceded to

be the fact, the trial judge was of the opinion that it would not be the duty of the defendant company to change its building to meet the exigencies arising from conditions for which it was not responsible. The evidence in the record is meager upon this point, but granting that the erection of these buildings of fourteen stories in height near the Peters building increased the force of the air currents, and that the panes of glass in the defendant's building, before the erection of near-by buildings of great height, were suitable and reasonably safe, we are nevertheless of the opinion that it was the duty of the defendant, as the owner of the building, to still keep its building and all of its appointments just as reasonably safe, if the conditions were so changed as to render what had previously been safe unsafe to passers by. As was held in *Monahan v. National Realty Company, 4 Ga. App. 680 (62 S. E. 127)*, not only must the landlord construct his building so that it will not be unsafe, but it must be so maintained as not to occasion injury to another. Of course, if a change in the condition or in the quality of safety of a building is effected by the unlawful act of another, or by the creation of a nuisance by another, over whose acts the owner of the building has no control, the owner of the building would in neither case be responsible for resultant injury; but there are many cases in which the lawful act of an adjacent landowner would call for the exercise of greater precaution for the safety of passers-by and others than might have been necessary in the original construction of a building. For instance, if an adjoining landowner should excavate a foundation, as he has a right to do, upon his own land, by reason of which the wall of another's building might be endangered, it would be necessary for the owner of the endangered building, in the exercise of due care for the safety of the public, to use efficient means to prevent his building from falling into the street. Ordinarily, artificial changes of conditions affecting a building which are legally effected must be regarded and acted upon by the owner of the building as much as the changes of condition which necessarily arise from the lapse of time and the ravages of the elements. To a lesser degree, but in the same sense that a defendant could not defend against a claim for an injury resulting from the fall of an old wall or from the fall of tiles or slate from a roof which may originally have been perfectly

constructed (if the fall of either was occasioned by long usage and decay), so the owner of a building which might, under its previous surroundings and conditions, have been reasonably safe as originally constructed, may, by a lawful change of conditions, have cast upon him the duty of changing his building so as to have it as reasonably safe under the changed conditions as it was originally and before the necessity for change arose. If, in lowering the grade of a street, the foundation should be impaired and the building become a menace to passers-by, the owner of the building might have his remedy in damages against a municipal corporation for the expense necessary to secure the safety of his building, but he could not escape liability, in case a passer-by should be injured by the fall of his wall, upon the ground that the city, and not himself, was responsible for the changed condition of his building from that of safety to that of danger. Or, if, by the raising of the level of a street, a sign under which passers-by could formerly go with safety should be brought in contact with the heads of pedestrians, and, by reason of this new danger, one who was walking the street at night, unaware of the presence of the sign, should be injured, the owner of the building could not absolve himself from liability upon the ground that the city and not himself had brought the sign in contact with the pedestrian's head. For if the sign was appurtenant to his building, it would be the duty of the owner to so locate it as to avoid injuring a passer-by. It is the duty of the owner of a building which abuts upon a public highway to keep it from being a source of danger to the public after its construction, as much as it is his duty originally to see that the building is not a source of danger to the public by reason of improper or unskilful construction. While the owner of a building abutting upon a public street is not an insurer of the absolute safety of those who pass upon the sidewalk, reasonable care must be exercised by him to keep it in such condition as that neither the building nor any part thereof will fall, and passers-by be thereby injured.

2. Regardless of the refusal to allow the amendment, we think the court erred in awarding a nonsuit and dismissing the plaintiff's case. The evidence showed that a pane of glass, without any apparent cause, fell from the window of the defendant's building and injured the plaintiff. The plaintiff had the right to be where

she was, and the duty was upon the defendant to use ordinary and reasonable care in the construction and maintenance of its building, so as not to occasion injury to passers-by. Barring human intervention (which was negatived in this case), panes of glass do not ordinarily fall from windows, unless the glass is not placed properly in the sash at the start, or unless by reason of lapse of time the sash and glass stand in need of repair. When the plaintiff showed that the pane of glass which struck her fell out of the window of the defendant's building, and that its fall was not caused by the occupants of the suite of rooms, or by the agency of any other person, she had made a prima facie case which should have been submitted to a jury, to say whether, from the circumstances attending the fall of the pane of glass, they would draw the inference that the fall of the glass and her consequent injury was due to the alleged negligence of the defendant company, or was a pure accident, or was attributable to such an extremely high wind as that the casualty might be considered the act of God. The maxim res ipsa loquitur is of limited application, but embodies a perfectly sound legal principle. It is frequently difficult to determine when it can be safely said that the thing speaks for itself. However, the process by which it is to be determined whether the physical facts and circumstances accompanying an injury are such that the act may be said itself to speak the negligence of the defendant is to be worked out by the jury and not by the court. Not only is negligence or diligence, in every case where either is involved, a question solely for the jury, but it is also the prerogative of the jury to say in the first instance whether the evidence adduced to raise the inference of fact,—that an extraordinary and unexplained casualty authorizes an inference that the defendant was negligent,—is sufficient or insufficient for the purpose.

Few subjects have been more fully discussed than the maxim res ipsa loquitur. Counsel for defendant in error insists that the maxim is caged, and that the decisions of the Supreme Court in Palmer Brick Co. v. Chenall, 119 Ga. 837 (47 S. E. 329), and in the case of Hudgins v. Coca Cola Bottling Co., 122 Ga. 695, 699 (50 S. E. 974), practically render meaningless, for all time in Georgia, this maxim. We do not so understand these rulings. The decision in the Hudgins case is based upon the fact that

the plaintiff was confessedly unable to state the cause of his in-
jury, and thereby failed to charge the defendant with responsibil-
ity therefor.   In the first appearance of the *Chenall* case, 117
*Ga.* 106 (43 S. E. 443), Justice Lamar, delivering the opinion
of the court, places upon the maxim res ipsa loquitur, as a
rule of evidence, the same construction that has been applied in
the majority of the States of the Union, as well as by the Eng-
lish courts.   When the case was first carried to the Supreme
Court the precise point now before us was before that court
for adjudication for the first time in Georgia.   Upon the
second appearance of the *Chenall* case in the Supreme Court (119
*Ga.* 837), the particular question involved was how far the appli-
cation of the maxim res ipsa loquitur was affected by the fact
that the plaintiff was a servant of the defendant, and thereby
had assumed the risks incident to his employment and to the
negligence of his fellow servants.   In so far as the opinion in the
later case, delivered by Justice Cobb, appears to confine or limit
the application of the maxim, it must be borne in mind that the
learned judge was dealing only with that specific point.   But there
was no retraction or modification of the original holding (where the
relation of master and servant does not exist), that " ordinarily,
extraordinary and external causes may be treated as the exception,
to be established by the defendant.   All that the plaintiff should
be required to do in the first instance is to show that the de-
fendant owned, operated, and maintained, or controlled and was
responsible for the management and maintenance of the thing
doing the damage; that the accident was of a kind which, in the
absence of proof of some external cause, does not ordinarily hap-
pen without negligence.   When he has shown this he has cast
the burden upon the defendant, who may then proceed to show
that the accident was occasioned by vis major, or by other causes
for which he was not responsible."   *Chenall* v. *Palmer Brick Co.,*
117 *Ga.* 109.   In the *Chenall* case, 119 *Ga.* 842, Justice Cobb,
after alluding to the burden which a servant has to carry, says :
"The maxim res ipsa loquitur is simply a rule of evidence.   The
general rule is that negligence is never presumed from the mere
fact of injury, yet the manner of the occurrence of the injury com-
plained of, or the attendant circumstances, may sometimes well
warrant an inference of negligence.   It is sometimes said that

it warrants a presumption of negligence; but the presumption referred to is not one of law but of fact.    It is however, more correct and less confusing to refer to it as an inference, rather than a presumption; and not an inference which the law draws from the fact, but an inference which the jury are authorized to draw; and not an inference which the jury are compelled to draw. In the trial of an action by a servant against a master, when it has been shown that the servant was in the exercise of due care, and the manner of the injury or the attendant circumstances are such that the injury could not have resulted unless the master had been negligent in some respect in which the law required him to be diligent for the servant's safety, then the jury might be authorized to infer that the master had been negligent in respect of the matter which was the basis of the suit, and would be authorized to base a finding upon such an inference, in the absence of an explanation which would be satisfactory to them; and it is not necessary that this explanation should satisfy them as to the cause of the injury, but an explanation which satisfies them simply that the master has exercised all the diligence which the law requires of him would be sufficient to rebut the inference of negligence resulting from the happening of the occurrence, although the cause thereof might still be involved in unsolvable mystery.    Under our system, where every question of negligence is left for determination by the jury, even in cases where the maxim under consideration is applicable, the judge should not charge the jury that there would be an inference of negligence from a given state of facts, but should instruct them in clear and unequivocal terms that negligence must be proved, and it is for them to consider whether the manner of the occurrence and the attendant circumstances are of such a character that they would, in their judgment and discretion, be authorized to draw an inference that the occurrence could not have taken place if due diligence on the part of the master had been exercised.    And they should also be instructed, that, while they are not required by the law to draw any inference of negligence from the matter, still it is within their province to determine whether the circumstances are such that such an inference might be properly drawn. If in a given case the jury see proper to draw an inference of negligence from the manner of the occurrence or the attendant

circumstances, the drawing of this inference is not necessarily to result in a finding in favor of the plaintiff. It imposes upon the jury the duty of making further inquiry as to whether this inference has been overcome by a satisfactory explanation. If the jury have drawn the inference of negligence, and there is evidence which satisfies their minds, notwithstanding such inference of negligence, that the occurrence was really brought about by the negligence of a fellow servant, the inference is overcome, and the jury should find in favor of the defendant."

In the ordinary case, as well remarked by Blackburn, J., in Scott v. London & St. Katherine Docks Co., 3 Hurl. & C. 596, as to matters which lie more in the knowledge of the opposite party, the fact of the accident may be sufficient to call upon the defendant to prove that there was no negligence. The rule, as stated in the Scott case, supra, by Erle, C. J. (who delivered the opinion of the court, while he himself dissented), is, that " There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management [of the machinery] use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

In *McDonnell* v. *Central Ry. Co.,* 118 *Ga.* 86 (44 S. E. 840), which was a case of master and servant, the decision is not expressly based on the rule of evidence embodied in the maxim res ipsa loquitur, but the court held that the lower court erred in awarding a nonsuit, because, as said by Justice Cobb, delivering the opinion: " The evidence disclosed a condition of affairs which would authorize a jury to find that the boiler was in a dangerous condition, entirely too dangerous for use. The defects in the boiler were shown to be of such a character that an inspection would have disclosed them, and from the evidence it is to be inferred that the character of the defects was such that they must have existed for some time. It is to be inferred that the work in which the plaintiff's husband was probably engaged at the time of his death rendered it usual, proper, and necessary that the engine should be heated and the boiler filled with steam. . . Under these circumstances, was the plaintiff entitled to

have a jury pass on her case? Has she carried the burden which the law imposes upon one suing for the homicide of an employee? There can be no question that there was sufficient evidence to authorize a jury to find negligence on the part of the defendant, so far as the condition of the boiler was concerned. It is unnecessary to determine whether the doctrine of res ipsa loquitur applies, but see the following cases: Illinois Central R. Co. v. Houck, 72 Ill. 285; Dunlap v. Steamboat Reliance, 2 Fed. 249; Robinson v. Railroad Co., 20 Blatch. 338 (9 Fed. 877); The Reliance, 4 Wood's C. C. Rep. 420 (2 Fed. 249); Ill. Cen. R. Co. v. Phillips, 49 Ill. 234. As boilers properly constructed and properly used do not generally explode, the explosion of a boiler would seem to be evidence of negligence in some one. It may have been that of the boiler-maker, or of the one whose duty it was to inspect the boiler before using it, or of the one who was using the machinery to which the boiler was attached. It would seem, therefore, that while the mere explosion of a boiler would raise a presumption of negligence on the part of some one, it would not necessarily be evidence of negligence on the part of the owner of the boiler. As we say, however, no decision as to this need be made in this case. There was evidence authorizing a finding that the defendant was negligent in furnishing such a boiler for use by an employee either at work with or upon the machinery with which it was connected. The evidence also authorized a finding that the company ought to have known of the defective condition of the boiler. The plaintiff has therefore successfully carried the burden which the law imposed upon her, of showing that there was a latent danger to which her husband was exposed, and which the company ought to have known of before placing her husband at work upon the locomotive, and about which it was its duty to warn him."

The rule in New York seems to be similar to the rulings in Georgia. 7 Words and Phrases, 6137: " The doctrine of res ipsa loquitur, as expounded by the Court of Appeals in its latest utterance on the subject, in Griffin v. Manice, 166 N. Y. 188 (59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630), relates simply to the probative force of evidence. It does not dispense with the necessity of evidence of the defendant's negligence in any case, but, on the contrary, expressly requires it. In

its application in those cases where the accident is such as in the ordinary course of business does not happen if reasonable care is used, the effect of the rule is that evidence of the attendant circumstances is sufficient for an inference of negligence, without proof of any specific negligent act. But the attendant circumstances shown must be such as will warrant an inference not of negligence only, but of defendant's negligence—an inference that the injury is attributable to some violation of defendant's duty. The learned judge who wrote the opinion in Griffin *v.* Manice, *supra,* in explaining the meaning and application of 'res ipsa loquitur,' quotes approvingly section 59 of Shearman & Redfield on Negligence, as follows: 'It is not that in any case negligence can be assumed from the mere fact of the accident and injury, but in these cases the surrounding circumstances which are necessarily brought, into view by showing how the accident occurred contain, without further proof, sufficient evidence of defendant's duty, and his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer.' The judge, in his opinion, also quotes approvingly from Benedick *v.* Potts, 88 Md. 52 (40 Atl. 1697, 41 L. R. A. 478), and concludes: 'The res includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish or to justify the jury in inferring the existence of the traversable or principal fact in issue— the defendant's negligence. The question in every case is the same —whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue.' Thus it was held in an action for personal injuries that the doctrine did not apply, as, while the circumstances may have shown negligence, there was nothing to suggest that it was the negligence of the master rather than that of fellow servants. Fink *v.* Slade, 66 App. Div. 105 (72 N. Y. Supp. 824)." The doctrine is given a liberal construction in Breen *v.* New York Cen. R. Co., 109 N. Y. 297 (16 N. E. 60, 4 Am. St. R. 450). In the Breen case the rule is thus stated: "There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such

.as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part." The application ·of the maxim as stated by the Supreme Court of Appeals of Virginia, following the ruling in the New York case, is as follows: "When the physical facts of an accident themselves create a reasonable probability that it resulted from negligence, the physical facts themselves are evidential, and furnish what the law terms evidence of negligence, in conformity with the maxim 'res ipsa loquitur.' Seybolt v. New York, L. I. & W. R. Co., 95 N. Y. 562 (47 Am. R. 75)." Thus where a loud and unusual noise came from an ·electric car, and a volume of smoke issued therefrom, frightening plaintiff's horse, an instruction that such noise and smoke raised a presumption that it would not have been caused had defendant used proper care in relation to the machinery of the car, and that the jury might infer that the defendant was guilty of negligence, was properly given. Richmond Railway & Electric Co. v. Hudgins, 100 Va. 409 (41 S. E. 736, 738). For additional authorities see.citations in 7 Words and Phrases, 6137-8.

No exact classification can be made of the instances in which the maxim res ipsa loquitur, as a rule of evidence, is to be applied by the jury. But in almost numberless decisions in which no specific reference is made to the rule or doctrine of res ipsa loquitur, it is not only plain that the existence of this rule of evidence is recognized, but also that the finding reached is supported by nothing else than the conclusion that in the case under consideration the application of the rule was warranted and that it was properly applied. Among many cases which might be cited, in which this is true and where the relation of master and servant existed, the leading case of Byrne v. Boston Hose and Rubber Co., 191 Mass. 40 (77 N. E. 696), and *King Mfg. Co.* v. *Walton,* 1 *Ga. · App.* 403 (58 S. E. 113), may profitably be referred to. In the Byrne case, supra, it is ruled that "if a machine, which is stopped by means of a shipper shifting the belt which transmits the power from a tight pulley to a loose one and is started again by reversing the process, after having been stopped in the proper manner by the person operating it, starts of itself and injures the operative, this fact unexplained is evidence of some defect

in the machine and of negligence on the part of its proprietor in allowing this defect to exist." The Supreme Court of Appeals of Virginia, upon the necessity, in some cases, for explanation by the defendant, says, that " where the thing causing the injury complained of is shown to be under the management of a defendant or his servant, and the occurrence is such that in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the occurrence arose from want of care." Peters v. Lynchburg Light Co. 108 Va. 333 (61 S. E. 745), citing the Scott case and other authorities. A similar ruling is found in Bice v. Wheeling Elec. Co., 62 W. Va. 685 (59 S. E. 626). " This phrase [res ipsa loquitur] . . is merely a short way of saying that the circumstances attendant. upon an accident are themselves of such character as to justify a jury in inferring negligence as the cause of that accident." Benedick v. Potts, 88 Md. 52 (40 Atl. 1067, 41 L. R. A. 478). The maxim res ipsa loquitur is simply a rule of evidence authorizing the jury to infer negligence on proof of circumstances indicating it. *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (62 S. E. 127) ; Alexander v. Nanticoke Light Co., 209 Pa. 571 (58 Atl. 1068) ; *Cochrell* v. *Langley Mfg. Co.,* ante, 317 (63 S. E. 244). Where circumstances are proved from which reasonable men might fairly disagree as to the existence of negligence, the question is for the jury. Roanoke Ry. & Elec. Co. v. Young (Va.), 62 S. E. 961 (4). When there is no other rational way to account for the existence of a fact, the jury may infer that it happened in that way, whether you call it res ipsa loquitur or not. Chesapeake Ry. Co. v. Rowsey (Va.), 62 S. E. 364, 368 (14) ; *Smith* v. *Atlantic Coast Line R. Co.,* ante, 219 (62 S. E. 1020). A plaintiff who shows that he was injured by the falling of a building into the street (Mullen v. St. John, 57 N. Y. 567, 15 Am. R. 530), or by the falling of a pole of a toll gate as he was passing thereunder (Hyde's Ferry Turnpike Co. v. Yates, 108 Tenn. 428, 67 S. W. 69), or by the falling of a brick from the defendant's wall (Murray v. McShane, 52 Md. 217, 36 Am. R. 367), or by electric shock from one of the defendant's poles (Moglia v. Nassau Elec. Co., 127 App. Div. 243, 111 N. Y. Sup. 70), thereby makes out a prima facie case, which, unless rebutted by

the defendant, is sufficient to legalize an inference of negligence by the jury.   See Burdick on Torts (2d ed.), 426.

We think, therefore, that the plaintiff established a satisfactory prima facie case, which should have been submitted to a jury.   It was for the jury to determine whether the circumstances were sufficient to authorize them to infer, upon the facts at issue, whether the defendant was negligent.   Learned counsel for the defendant in error insists, however, that there was no evidence to sustain either of the three allegations of negligence to which we referred.   Of course, if this be true, the court would not have erred in awarding a nonsuit.   We think, however, that the evidence is sufficient to authorize the jury to infer, although they would not be required to draw such an inference, either that the window-pane had not been properly placed in the sash originally, or that the window-pane was defective and not capable of sustaining the force of such winds as are usual in the locality in question.   On the other hand, the inference may be drawn, from the testimony, that the fall of the glass was due to an unusual hurricane.   But no one can say which inference would be drawn by the jury, whose experience in such matters is more to be trusted than the more limited knowledge of the profession upon such practical subjects; and it is the peculiar province of the jury to draw all inferences of fact, just as it is the province of the court to draw the inferences of law.

As we see it, there is no force in the argument that testimony could have been brought from the camp of the defendant to show that the glass was secured in the sash, or that the glass was of sufficient thickness.   It is well known that glass does not ordinarily fall out of windows that are properly constructed.   It is peculiarly within the power of the defendant to show that, for the reason that all ordinary care had been used in the selection of proper glass and in the proper glazing of the window, the fall of the window-pane could not have been prevented by the exercise of ordinary care.   The plaintiff was only required to make a prima facie case.   This she did.   And her case was not altered by the fact that the fracture of the glass might have been caused by an excessive draft from the interior of the building, if it was such a draft as was to be expected in the building as it was constructed.   It is as much the duty of the owner of a building to see that his

building is safe (so far as pedestrians passing by are concerned) from dangers which might arise from the interior construction of the building as from those dangers which depend upon a defective exterior. It is the cause of injury which must be guarded against.                                    *Judgment reversed.*