32057. JACKSON *v.* THOMPSON.

Decided July 8, 1948.

*Arnold S. Kaye, Joseph F. Haas,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy, James K. Rankin, C. Baxter Jones Jr.,* for defendant.

SUTTON, C. J. (After stating the foregoing facts.) "A nonsuit shall not be granted merely because the court would not allow a verdict for plaintiff to stand; but if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit shall be granted." Code, § 110-310. If the plaintiff fails to prove what he has thus alleged, or if he actually proves every fact charged, but on cross-examination or otherwise disproves his case by establishing beyond doubt the existence of other defensive facts which make it manifest that he ought not on the whole evidence to recover, a nonsuit should be granted. *Evans* v. *Josephine Mills,* 119 *Ga.* 448, 450 (46 S. E. 674). "A motion to nonsuit presents for decision the single question whether or not the evidence introduced in behalf of the plaintiff, assuming it to be true, proves his case as laid." *Reeves* v. *Jackson,* 113 *Ga.* 182 (2) (38 S. E. 314). Also see *Kelly* v. *Strouse,* 116 *Ga.* 872, 873 (4) (43 S. E. 280). In passing on the question of whether or not the court rightly awarded the nonsuit, the evidence must be taken most strongly in favor of the plaintiff. *Stenger* v. *Mitchell,* 70 *Ga. App.* 563, 566 (28 S. E. 2d, 885) ; *Yeager* v. *Weeks,* 74 *Ga. App.* 84, 85 (39 S. E. 2d, 84).

Except as to the allegations of negligence, there was sufficient evidence to authorize a jury to find in favor of the plaintiff on all essential allegations of the petition, including a finding that contact with lime and cement in the course of employment caused the plaintiff's disease, and the decision in this case must turn solely upon the question of whether any of the acts of negligence charged by the plaintiff in his petition were proved, or assuming that certain of these acts may have been proved, that the evidence at the same time did not prove these acts as being actionable negligence as against the employer. The plaintiff was a plasterer of more than ten years experience, who, by his own admission, had not been accustomed to receive protective clothing from an employer, or bathing facilities, and he must have been fully aware of the ordinary risks involved in his occupation. He stated he would have worn rubber gloves if he could have purchased them, and that he did wear extra undergarments, and regularly used

bathing facilities at his residence. As to the ordinary risks involved in the occupation, there was an assumption of risk for which the master is not liable. Code, § 66-303. Furthermore, there is no evidence to show that the lime and cement preparation was inherently dangerous, or was defective and harmful, other than the evidence that quick lime rather than slacked lime was put in the mixture at one time. This single incident is not shown to have been connected with the illness, and was the negligence or misconduct of a fellow employee who was discharged by the employer for this act, and the master is not chargeable with the negligence or misconduct of other servants about the same business. Code, § 66-304. The principles contained in these Code sections have been affirmed many times by the Supreme Court and by this court. The evidence leads to the conclusion that contact with lime and cement of ordinary propensities over a period of years would and probably did cause the plaintiff's illness, irrespective of the negligence of anyone, and there is no proof as to the negligence of the employer as charged in the petition. One of the medical doctors, Dr. Glenville Giddings, who qualified his testimony by stating that he was not an expert on diseases of the nature of that contracted by the plaintiff, testified: "I don't think that the condition that Adolphus had itself would indicate that there was any change in the cement or plaster on this particular occasion. . . I don't think anything would necessarily have to happen to the lime or cement which would cause Adolphus Jackson to have a breaking out after that three and a half month's exposure under those working conditions. . . That is exactly how an allergic reaction is set up—by repeated exposure to some agent. I couldn't say that that would indicate there was any change in the lime or cement. That isn't of particular concern. . . I think it is pretty general knowledge that if you are exposed to cement, which contains lime, that a so-called lime burn or cement burn will result in most cases. . . In an allergic condition, it is not the amount of substance that gets on the skin. The smallest minute particle theoretically will set off an allergic reaction, no matter how small it is." Dr. Howard Hailey, who qualified as an expert on skin diseases of the nature of plaintiff's illness, testified: "What I say is that some persons become sensitive' to ordinary cement and ordinary lime. I do

not intend to infer that there is anything wrong with the cement or the lime. I do not mean to say that the lime is of inferior quality. I do not mean to infer that the cement is of inferior quality. The regular Portland cement that is used in the building trade and the standard lime which is used by plasterers in the building trade will cause some persons who are sensitive to it to react and be allergic to it. . . Lime and cement and plaster or mortar are pretty commonly and generally known as caustic agents. It is pretty generally known in my opinion among people in this industry that lime and Portland cement and the substances with which this boy worked can cause this kind of occupational disease."

Counsel for the plaintiff in error earnestly invoke the doctrine of res ipsa loquitur. That doctrine would be applicable where the illness would not ordinarily happen without negligence and therefore negligence would be inferred on the part of the defendant who has control of the thing doing the damage, but here the evidence, particularly that of the medical doctors, disproves the inference of negligence, and serves to explain the cause of the plaintiff's illness. See *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 *Ga. App.* 573 (190 S. E. 879); *Minkovitz* v. *Fine,* 67 *Ga. App.* 176 (19 S. E. 2d, 561); *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106 (43 S. E. 443); *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329).

The cases of *Middlebrooks* v. *Atlantic Metallic Casket Co.,* 63 *Ga. App.* 620 (11 S. E. 2d, 682); *Martin* v. *Tubize-Chatillon Corp.,* 66 *Ga. App.* 481 (17 S. E. 2d, 915), and *Peerless Woolen Mills* v. *Pharr,* 74 *Ga. App.* 459 (40 S. E. 2d, 106), cited and relied on by the plaintiff in error, were before this court on rulings on demurrers, and the court was passing upon the question of whether there was a cause of action, assuming the facts to be true. The case at bar is here on a nonsuit, and there is no question as to the existence of a cause of action, but only that of whether the evidence supports the allegations of negligence in the petition. There are also factual dissimilarities in the above cases when compared with the present case.

In an action for damages because of injuries or illness to a servant due to the alleged negligence of the master during the course of employment, where there is no evidence to sustain the alleged

acts of negligence, or where the evidence offered disproves the alleged acts of negligence, either by showing an assumption of risk on the part of the servant, or that the negligence was that of a fellow servant, or otherwise by showing that the alleged negligence was not the proximate cause of the injuries or illness, the court did not err in the granting of a nonsuit upon the close of the plaintiff's evidence, after a motion for nonsuit by the defendant.     *Judgment affirmed.   Felton and Parker, JJ., concur.*