## CHENALL *v.* PALMER BRICK COMPANY.

1. Many accidents are mere casualties for which no one is to blame; others may have been caused by strangers, trespassers, by a fellow-servant, by the defendant, or by the defendant and the plaintiff jointly. In this class of cases there is no presumption of negligence, and, even if negligence appear, there is no presumption as to who was guilty thereof.

2. There are cases where, in the absence of proof of any external cause, and

the accident is of a kind which does not ordinarily occur without negligence, a jury may infer the want of due care from the mere happening of the occurrence; prima facie such negligence will be attributed to the person charged by law with the duty of maintaining and managing the thing causing the injury.

3. Where no explanation is given as to the cause of the fall of a brick arch, the maxim res ipsa loquitur applies, and the jury may infer that there was negligence on part of the owner, either in its original construction or in its subsequent maintenance.

4. The master is bound to exercise ordinary care in furnishing the servant a safe place in which to work. The servant must exercise like care in discovering any defects therein.

5. Where it appears that a laborer was ordered to work under a brick arch which fell and injured him, and that he did not know and could not by the exercise of ordinary care discover any danger in its construction, and the evidence as to the cause of the fall is not sufficient to necessarily rebut the inference of negligence which may be drawn from the fall itself, it is error to direct a verdict in favor of the defendant.

Argued January 26, — Decided February 7, 1903.

Action for damages. Before Judge Reid. City court of Atlanta. May 15, 1903.

*Burton Smith* and *George Gordon*, for plaintiff.
*Smith, Hammond & Smith*, for defendant.

LAMAR, J. The plaintiff, having been injured by the fall of a brick arch, brought suit against the defendant, alleging, and offering evidence tending to show, that it was liable to him because it had put him to work in an unsafe place under an arch that had been unskillfully constructed, and that he did not know of its condition, and could not have discovered the defect by the exercise of ordinary care. The defendant denied all of the contentions on the part of the plaintiff, and offered evidence to the effect that the plaintiff had no business at the place where he was injured; that he was not there in the discharge of any duty, but he, with two other employees, had concealed himself for the purpose of eating a watermelon; that the arch was properly constructed, and any defect causing it to fall was latent and undiscoverable by the master in the exercise of ordinary care; that for its construction the master had used good material and skillful workmen, under proper supervision; that the plaintiff himself had assisted in the building of the arch; and that if there was any defect therein, it was caused by the negligence of a fellow-servant. The evidence was very voluminous, and the foregoing is only a brief analysis thereof. After both parties had

introduced their testimony, and while the case was being argued to the jury, the judge of his own motion directed a verdict in favor of the defendant; to which ruling plaintiff excepted. From the argument of counsel and the brief of the testimony we are led to infer that the verdict was directed in favor of the defendant because the court found that there was no evidence of any negligence on the part of the master with reference to the construction or maintenance of the brick arch. The defendant insists that there was no proof and no presumption of negligence; while the plaintiff contends that the mere fall of the structure was sufficient to give rise to a presumption of negligence, relying upon the application of the maxim res ipsa loquitur.

There is no absolute presumption of negligence in any case under our law. Even as to railroads, preliminary proof that the injury was occasioned by the running of the locomotives, cars, or other machinery of such company must be submitted before the presumption of negligence arises, Civil Code, § 2321, being a sort of statutory application of the maxim res ipsa loquitur, since that statute raises a presumption of negligence from the mere happening of the injury. But in all other instances the plaintiff must establish on his part all of the facts necessary to show that the defendant is liable, the defendant not being called on to make any defense until enough testimony has been introduced to show that it owed a duty to the plaintiff, that it negligently failed in its performance, and that in consequence thereof the plaintiff was damaged. Proof of the duty and injury are only parts of the plaintiff's case. The law raises no presumption whatever as to who was to blame. The burden is on the plaintiff to show that defendant was negligent. How this negligence is to be proved varies. It may be possible to bring direct evidence as to the cause of the injury, and who was responsible therefor; or there may be direct evidence of some facts, and circumstantial evidence as to others; or purely circumstantial evidence may by itself be sufficient to show that defendant was at fault. Civil Code, § 5157. There is in neither of these instances, however, any presumption of law, but evidence on which the jury may reason, and from which they may draw conclusions as to matters not directly proved. This inference is one of fact and not of law. It is to be reached by the jury and not by the court. When from these facts an inference of negligence arises, it may be rebutted by the

defendant like any other presumption arising from proofs submitted Kaples *v.* Orth, 61 Wis. 535.

There is a disposition to argue that every injury is the result of somebody's negligence, but in many cases the injury is a mere accident or casualty for which, humanly speaking, no one is to blame; in others the person injured is at fault; in some his negligence contributes to the result; in others a fellow-servant was to blame. In all such instances the maxim res ipsa loquitur affords little or no assistance to the jury; for even supposing that the injury itself proclaims negligence, it says nothing as to who was negligent, and fixes no basis for determining whether the plaintiff, the defendant, a fellow-servant, or some stranger may not have been at fault. There are other cases where, when it is shown that the defendant owned or controlled the thing which, when properly constructed, maintained, or operated, did not, in the ordinary course of events, so act as to injure those near by, proof that damage was caused by such thing affords reasonable evidence that the injury was occasioned by want of ordinary care. Prima facie that want of due care should be referred to him under whose management and control the instrument of injury was found. The injury would not be warranted in reasoning in a strictly logical form: "buildings do not collapse without negligence; this building collapsed; therefore there was negligence;" for buildings do fall without any one being to blame, and as a result of flood and storm. But, ordinarily, extraordinary and external causes may be treated as the exception, to be established by the defendant. All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage; that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which he was not responsible.

It is rather remarkable that out of the multitude of personal-injury cases decided by this court, in no one has the maxim res ipsa loquitur been directly invoked. *Yonge* v. *Kinney*, 28 *Ga.* 111. It is, however, so well founded in reason, and so sustained by authority, that it is not necessary to make elaborate citations.

The most apt and concise statement of the principle is found in the leading case of Scott *v.* London & St. Katherine Docks Co., 3 Hurl. & C. 596, where the plaintiff was injured by the fall of bags of sugar being lowered from defendant's warehouse, and the court held: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care." A case somewhat more directly in point is that of Waterhouse *v.* Brewing Company, 48 L. R. A. 157 (a), 159, where the building had stood for ten years, and the defendant insisted that that fact contradicted the charge that the building was negligently constructed. The court, however, said, "From the fact that the building fell of its own weight, without any external violence, a fair presumption would be that the fall occurred through adequate causes, one of the most natural of which would be the negligent and faulty construction of the building itself." While the master was not a guarantor, he was yet bound to exercise ordinary care in furnishing the servant a safe place in which to do his work (*Preston* v. *Central R. Co.*, 84 *Ga.* 590), and could not escape his obligation by deputing such duty to a fellow-servant. *Southern Bauxite Co.* v. *Fuller*, 116 *Ga.* 695. In *Keith* v. *Walker Iron Co.*, 81 *Ga.* 49, where the arch fell, the question involved was not the duty of a master to furnish a safe place, but a clear instance where the doctrine of fellow-servant applied; for the injured plaintiff was engaged in the construction of the arch along with the mason who was in charge of the work. Of course, the defendant could have made out a case which would warrant the judge in holding that the presumption arising from the fall of the arch had been rebutted, and under such circumstances he could have directed a verdict in favor of the defendant; but the evidence on all points involved in the case was conflicting; there was some evidence of cracks, " bulges," and other defects, from which the jury could have found that the master in the exercise of ordinary care might have discovered that the arch was defective and an unsafe place in which to station a man at work. The plaintiff having postively testified that he did not know and could not discover

that the arch was unsafe, and having also offered evidence as to being under the arch in obedience to orders and in the line of his duty, it was error to direct a verdict for the defendant.

*Judgment reversed. By five Justices.*