40319. ATLANTA COCA-COLA BOTTLING COMPANY v. BURKE.

54

DECIDED JANUARY 30, 1964.

58

*Freeman & Hawkins, Paul M. Hawkins, Joe C. Freeman, Jr.,* for plaintiff in error.

*Wilson Brooks, Philip T. Keen,* contra.

RUSSELL, Judge. ■ The plaintiff introduced in evidence over the defendant's objection a capped Coca-Cola bottle containing a chain of beads, testimony regarding which was that it was purchased from a Coca-Cola vending machine, had not been opened, and the foreign substance was in it at the time of purchase, which the court admitted for the sole purpose of showing that the inspection machines used by the defendant were not infallible. The objection was then made that the bottle had not been traced back to this defendant, since it had on it the inscription "Made for Gainesville Bottling Plant" and there was no testimony from which it could be determined where the bottling had actually been done. In the absence of evidence tend-

ing to show that it was in fact bottled at the defendant's plant and that its condition and contents were unchanged since leaving the defendant's control, the admission of the bottle as real evidence constituted reversible error. *Macon Coca-Cola Bottling Co. v. Crane,* 55 Ga. App. 573 (190 SE 879); *Macon Coca-Cola Bottling Co. v. Chancey,* 216 Ga. 61 (2) (114 SE2d 517).

■ "Where an action is brought to recover damages for an injury caused by the explosion of a bottle, the contents of which were manufactured, bottled, and sold by the defendant as a harmless beverage, an inference of negligence on the part of the manufacturer arises, when it is shown that all the persons through whose hands the bottle had passed were free from fault, and that the condition of the bottle and its contents had not been changed since it left the defendant's possession." *Payne v. Rome Coca-Cola Bottling Co.,* 10 Ga. App. 762 (73 SE 1087); *Macon Coca-Cola Bottling Co. v. Crane,* 55 Ga. App. 573, supra. The Supreme Court has held similarly, in a case involving a foreign substance, that there must be evidence to authorize the jury to find that the bottle was in the same condition as when it left the manufacturer's control. *Macon Coca-Cola Bottling Co. v. Chancey,* 216 Ga. 61, supra. It is thus established that before any inference of negligence on the part of the defendant could arise, there must have been sufficient evidence that the bottle which exploded had not been subjected to negligent handling or treatment, nor the condition or contents thereof changed since leaving the defendant manufacturer's control.

The evidence most favorable to the defendant was that there were two Coke machines over which the plaintiff had control, one upstairs, next to which he worked, and another one, the one he was loading at the time of the alleged explosion, located downstairs; that he had seen defendant's deliveryman unload Cokes about 60—75% of the time since he worked next to the one upstairs; that the only place available to store the crates of Cokes for the downstairs machine was on the cement floor adjacent to the machine, which location was close to a main stream of traffic of heavy skids of paper and other materials; that an employee who worked near the downstairs Coke machine had never seen the defendant deliver the Cokes there since a

door blocked his view; that although the bottles did not usually stay there long, because of the location and the printing company's policy of keeping the way clear, sometimes the defendant probably left more Cokes than would go into the machine and some of them might have remained on the floor overnight; that Cokes which would not go into the rotating drum of the machine were stored in a storage drawer underneath until there was room for them in the drum.

In the *Chancey* case, the Supreme Court characterized as a "sound statement of the doctrine of res ipsa loquitur and its applicability" the following from *Atlanta Coca-Cola Bottling Co. v. Danneman*, 25 Ga. App. 43 (102 SE 542): "Just as in civil cases facts are proved by a mere preponderance of the evidence, so in the application of this doctrine, *if in the opinion of the jury* the most *reasonable* and most *probable* inference which can be drawn from the nature and character of such an extraordinary event is that it would not and could not have happened had not the defendant been guilty of the particular conduct charged, then there has been an exclusion in their minds of every other reasonable hypothesis, not by evidence, but by virtue of the peculiar nature and character of the event speaking for itself" and citing with approval *Augusta R. &c. Co. v. Weekly*, 124 Ga. 384 (52 SE 444).

In *Crane*, thanks not only to an excellent opinion by Judge Sutton, but as well to an excellent dissent by Judge Felton, it appears that a verdict for the plaintiff was upheld against the same arguments here put forward and under almost identical evidence. There was evidence in that case that the defendant bottled over 10,000,000 Coca-Colas per year; that they were subject to exceedingly stringent testing and none exploded, that all bottles had to withstand a pressure of 750 pounds per square inch (the evidence in this case is 500 to 800 pounds p.s.i.). There was evidence that the bottles could not have been tampered with until left on the premises of the retailer. As to the possibility of tampering with the bottles later, it was shown that the crates had been left by the defendant on the retailer's premises, placed under a counter, and left there over night (unaccounted for). The time lag in the case here under consideration is con-

siderably less; as shown by the following: "A. The Coca-Cola man came from the back . . . and unloaded the Coca-Colas for the machine downstairs . . . and then he came directly upstairs and left the Cokes back at the machine there and came on across the room which is open to where I work and I paid him for whatever Cokes he left and he had the bills with him. I would go directly from there downstairs, which is where the press room is to get the Cokes up out of the way of moving the printed matter and the skids of paper that was coming in. Q. What did you do on this particular day, March 14? A. I had opened the Coke machine. Q. Well, had you gone through this same process on this particular day? A. Yes, Sir, I had." In reply to the hypothesis that because the delivery man only left as many cases of bottles as there were empty cases of bottles to remove, there might have been a case of bottles present which had been in the location longer than a few minutes, the obvious answer is that the witness testified that the cases were stacked waist high, and that the bottle which exploded in his hand was removed from the top crate. Obviously, a left-over crate lying on the floor would not have been in the top position. In this case, as in *Crane*, the defendant's undisputed evidence was that the bottles were subject to rigorous inspection, that they were in perfect condition when delivered to the premises on which they were sold, and that therefore the injury, if caused by negligence, was due to the negligence of someone other than itself. But in *Crane* the bottles were subjected to greater pressure control than here, and, after arriving on the marketing premises were left overnight, instead of just a few minutes. On its facts, then, *Crane* settles the question that *res ipsa* is involved in this case. The same conclusion, although factually not so strong, is to be found in *Payne v. Rome Coca-Cola Bottling Co.*, 10 Ga. App. 762, supra, *Macon Coca-Cola Bottling Co. v. Chancey*, 216 Ga. 61, supra, *Atlanta Coca-Cola Bottling Co. v. Danneman*, 25 Ga. App. 43, supra; *Atlanta Coca-Cola Bottling Co. v. Shipp*, 41 Ga. App. 705 (154 SE 385) and *Atlanta Coca-Cola Bottling Co. v. Dean*, 43 Ga. App. 682 (160 SE 105).

Did the uncontradicted evidence of the defendant as to the care which is used in bottling its beverages thereafter cause the

presumption of negligence which was raised in the jury's mind by the application of the doctrine to disappear as a matter of law, or did it remain a jury question as to whether the explanation of the defendant as to its lack of negligence was to be accepted? In other words, was the inference wiped out as a matter of law by evidence which neither traced this *particular* bottle (as opposed to the care used in bottling generally) nor suggested any other reason for the injury? It appears that, while there is admittedly a difference of opinion in some jurisdictions as to the effect of such evidence, both in Georgia and under decisions of the United States Supreme Court the matter remains for the jury. As to Georgia, without analyzing all the cases dealing with the doctrine, the exact point was raised and decided in *Crane,* supra, where the defendant's evidence was a little weaker than it is here. This is shown by Judge Felton's statement in his dissent. He states (55 Ga. App. 598): "The question to be decided is whether the rule of res ipsa loquitur would be applicable as a final proposition, in view of the uncontradicted evidence of the defendant negativing negligence on its part or showing that the injury could reasonably have occurred without its negligence." And again (p. 604): "The majority seems to be of the opinion that after a prima facie case is made, the burden is on the defendant to prove that he was not negligent, or to prove that the accident was 'occasioned by vis major or by other causes for which he was not responsible.' I do not think that is the law." The majority opinion (p. 582) sums up the case: "It is not shown that the defendant, as was its burden to do, established any vis major or external causes for which it was not responsible."

This accords with Terminal Railroad Assn. of St. Louis v. Staengel, 122 F2d 271 (136 ALR 789), where, in a judgment of affirmance, the court held: "The inquiry is whether all the evidence here is so conclusive as to lack of negligence by defendant that, under the above rules of decision, a verdict should have been directed. If so, the evidence must furnish 'an explanation' (San Juan Light & Transit Co. v. Requena . . . 224 U.S. 99, 32 SC 401, 56 LE 680) of the occurrence which is so compelling that no verdict to the contrary should be allowed to stand."

The defendant here made no effort to explain why the bottle burst. It did not contradict the fact that it did burst. It contented itself with relying upon a showing of lack of negligence on its part. This explanation did not convince the jury. In the absence of any other explanation, the question of lack of negligence on the part of the defendant, regardless of the cogency of its evidence, remained for the jury and not for the court to decide. The general grounds of the motion for a new trial and special grounds 4, 5, 9 and 10 are without merit.

■ A careful reading of *Turner v. Turner*, 186 Ga. 223 (2) (197 SE 771, 116 ALR 1396) and the citations therein contained supports the proposition that while it is not error in the absence of a request to instruct the jury on a contention of one of the parties which although supported by evidence is not raised by the pleadings, the converse is also true as a general rule; that, is, where the request is pertinent and material, and goes to an issue made by the evidence it should be given in charge although it may not have been specifically raised by the pleadings in the case. See also *Warwick Long Leaf Co. v. Zorn*, 95 Ga. App. 344 (1) (98 SE2d 62). Some issues of course cannot be raised except by virtue of special pleading, but in general under *Code Ann.* § 70-207, if the request is legal, pertinent, and requested in writing it should be given. An instruction in a *res ipsa* case that should the jury believe neither the defendant nor the plaintiff to have been negligent, and believe that both parties exercised ordinary care, then the occurrence is what the law designates an unavoidable accident requiring a verdict for the defendant, is both legal and pertinent. *Slaughter v. Atlanta Coca-Cola Bottling Co.*, 48 Ga. App. 327 (172 SE 723). The instruction requested in special ground 12 should have been given in charge, and the failure to do so was error.

■ (a) All the remaining assignments of error which have been argued by counsel for the plaintiff in error deal with the failure of the trial court to give certain principles of law to the jury in the language requested. Since negligence, like any other fact, may be established by circumstantial as well as by direct evidence, *Georgia Coast &c. R. Co. v. Smith*, 22 Ga. App. 332, (95 SE 1017), special grounds 7, 14, and 16 contain an erro-

neous statement of the law. As was stated in *Sinkovitz v. Peters Land Co.*, 5 Ga. App. 788 (2a) (64 SE 93): "Where the physical facts surrounding an occurrence are such as to create a reasonable probability that the occurrence—and the consequent injury—resulted from negligence, the physical facts themselves are evidential, and may or may not furnish evidence of the particular negligence alleged." One of the propositions contained in special ground 8, that "if the subsequent accident did not result *entirely* from such negligence . . . there could be no recovery" is obviously inaccurate. Special grounds 11 and 13 might have been confusing to the jury in the form in which requested, as they might be interpreted in such manner as to read the doctrine of *res ipsa loquitur* out of the case.

(b) However, the objections which may be urged against grounds 11 and 13 do not apply to the request contained in special ground 15, which states in part: "If you find that the defendant has used ordinary care there can be no recovery. The mere fact that the bottle burst would not authorize you to find a verdict against the defendant unless you further find that the defendant was negligent, that is, lacking in care in one or more ways set out in the petition. If it has not been satisfactorily shown to you what caused the bursting or explosion of the bottle in question, and if the cause remains a mystery to you, unless it has been shown to your satisfaction that the bottle burst because of the alleged negligence of the defendant, there can be no recovery," and which also contained the statement that manufacturers of foodstuffs are not insurers of their products, should have been given in charge on request. See *Palmer Brick Co. v. Chenall*, 119 Ga. 837, 842 (47 SE 329).

The trial court erred in overruling the motion for a new trial as amended.

*Judgment reversed. Eberhardt, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. I concur in the judgment and in the rulings in this case but I concur in the ruling in Division 2 because I am bound by the rulings of this court and the Supreme Court which I think are erroneous. I am writing this special concurrence in the hope that the bar and

appellate courts of this State will take another look at what the courts of Georgia and the other States have done with the rule of res ipsa loquitur and the rule of circumstantial evidence. In spite of the red flags of caution raised by the courts as to the application of the rule it has been, as it were, sanctified and glorified to the extent that it has become sovereign in the field of circumstantial evidence where the ordinary rules of circumstantial evidence remain only ordinary citizens subject to the guides of reason, logic, experience and common sense. The ruling in *Macon Coca-Cola Bottling Co. v. Chancey*, 216 Ga. 61, supra, puts a res ipsa case beyond appellate scrutiny and review and gives the jury unbridled and final authority. This is not true as to cases involving ordinary circumstantial evidence where the evidence is not in conflict. I agree with the ruling in the *Chancey* case, but that was a case where the evidence as to the bottler's care was in conflict with the evidence of due care. If a jury believes testimony that a foreign substance was in a bottled beverage there is no escape from a finding of the negligence of the bottler provided the negligence or the deliberate act of another is found to be excluded. An exploding bottle case presents a different question because in such a case there may be no inconsistent circumstantial evidence showing want of due care. In an explosion case due care may be shown despite the fact that the cause of the explosion remains a mystery. Different interpretations have been put on the ruling that a bottler may escape liability by proving that the accident was caused by "vis major" or by "other causes for which he was not responsible." In my dissent in the *Crane* case I said that in my opinion that was not the law. What I meant was that the majority's interpretation of such a ruling was not the law. A bottler may exclude the theory of his negligence by proving ordinary care without showing what caused the explosion. If that is not true how can a bottler exculpate himself from the charge of negligence and the cause of the explosion still remain a mystery? Some Georgia cases support my view and some are contrary thereto.

As Professor William Prosser points out in his treatise on "The Procedural Effect of Res Ipsa Loquitur," published in the

Minnesota Law Review in 1936, in Vol. 20, page 241, the rule is confusing, illogical and unnecessary. I quote the article in its entirety. Much has been written since, but no new light has appeared. The cases cited by Professor Prosser in his footnotes are omitted. It is assumed that the sentences ended by footnote number are attributed to the cases cited in the footnote cited for each and that such statements are not necessarily the views of Professor Prosser: "The Procedural Effect of Res Ipsa Loquitur.[1]

"There is magic in a formula, especially if it be in Latin. Res ipsa loquitur means nothing more than 'the thing speaks for itself.' The phrase is at least as old as Cicero,[2] and it has long been familiar to the law. It seems to have been used first in 1614, where usury was apparent upon the face of an instrument.[3] It has been employed in connection with the revocation of a license to use a way,[4] and misrepresentations in a sale of goods.[5] In 1863 Baron Pollock casually let it fall in the course of argument with counsel in a negligence case.[6] From this small beginning, there has developed an extensive 'doctrine' of res ipsa loquitur, which is the source of endless confusion in the courts.

"There is more general agreement upon the conditions required for the application of the doctrine than as to its effect when applied. The principle was first stated by Chief Justice Erle, in *Scott v. London Dock Co.*:[7]

" 'There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' Dean Wigmore has suggested[8] three requirements for the application of res ipsa loquitur, which have been more or less uniformly accepted. The plaintiff must have been injured by an apparatus or instrumentality whose nature is such that injury is not ordinarily to be expected in the absence of negligence.[9] At the time of the injury, both inspection and user must have been in the exclusive control of the defendant.[10] And the injurious occurrence or condition must not have been

due to any voluntary action on the part of the plaintiff.[11] The purpose of these limitations is evident. The circumstances must be such as to give rise to an inference that someone has been negligent, and the defendant's control of the situation must be such that the inference will point to the defendant. The mere occurrence of an accident alone, without these attendant circumstances, never will be sufficient to establish a res ipsa loquitur case, since it creates no reasonable inference that the defendant has been negligent.[12]

"Dean Wigmore says further[13] that the force and justification of the principle lies in the fact that the evidence of the true cause of the accident is accessible to the defendant, and not accessible to the plaintiff. In other words, that the defendant is in a position to explain the accident, while the plaintiff is not. This certainly is mentioned in many cases[14] as a reason for the application of the rule, and there are even decisions[15] to the effect that res ipsa loquitur is not available to a plaintiff who is in a better position to produce evidence than the defendant. But this factor seems not to be indispensable, and may have been overemphasized, in the light of cases[16] applying the principle where the defendant is dead, or unable to produce any evidence at all. A few early decisions[17] refused to find a res ipsa case in the absence of a contractual relation between the parties; but this requirement is now rejected generally.[18]

"When the plaintiff succeeds in making out a res ipsa loquitur case, he obtains a procedural advantage over the defendant. As to the extent of this advantage, and the effect to be given to it, the courts are not at all in harmony. Since much of the confusion results from the various meanings assigned to terms such as 'presumption,' 'inference,' 'prima facie case,' 'burden of proof,' 'burden of going forward with the evidence,' and the like, it is necessary to begin any discussion of the problem with definitions. The following terms will be used hereafter in the senses indicated.

"1. *Permissible Inference.* The least effect which may be given to res ipsa loquitur is to permit the jury to infer from the plaintiff's case, without other evidence, that the defendant has been negligent. Such an inference is enough to satisfy, in the first

instance, the burden which rests upon the plaintiff to introduce evidence upon which reasonable men may find in his favor. It is enough to avoid a nonsuit, or a dismissal. It is not enough to entitle him to a directed verdict, even though the defendant rests without evidence. It shifts no 'burden' to the defendant, except in the sense that if the defendant offers no evidence, he runs the risk that the jury may find against him. The jury will be permitted to accept the inference, but it is not compulsory; if they see fit to find for the defendant they are free to do so. A verdict either way will be sustained.[19]  In other words, a 'permissible inference' makes enough of a case to get to the jury, and no more. Sometimes it is called a 'prima facie case,' but as that term is used by some courts to designate a presumption, it will be avoided in this discussion.

"2. *Presumption.* A greater advantage is given to the plaintiff if his res ipsa loquitur case is treated as creating a presumption. This means that the jury will not merely be permitted to infer the defendant's negligence, but, in the absence of evidence to the contrary, will be required by the court to do so. In other words, if the defendant rests without evidence, the plaintiff will be entitled to a directed verdict. The burden of going forward with evidence is placed upon the defendant, in the sense that if he does not offer evidence, a verdict will necessarily be directed against him. If the defendant does offer substantial evidence, the presumption is 'rebutted'; it is more correct to say that since there is now evidence on either side, the jury may find either way, and there is no occasion for a directed verdict—the presumption merely disappears. The presumption does not transfer to the defendant the 'burden of proof' in the sense of requiring the defendant to produce evidence of greater weight than that offered by the plaintiff. If, when all the evidence is in, it is evenly balanced, the verdict must be for the defendant.[20]

"3. *Burden of Proof.* The greatest effect given to res ipsa loquitur is to place upon the defendant the ultimate burden of proof. This means that the defendant is required to prove by a preponderance of the evidence that the injury was not caused by his negligence. He is required to produce evidence which

will have greater weight than that offered by the plaintiff. Upon all the evidence, the defendant's case must outweigh that of the plaintiff; if the two are evenly balanced, the defendant must lose. Since the weight of the evidence ordinarily is for the jury, the question usually arises upon instructions to the jury; but if it is clear that the defendant has failed to sustain the burden, the court must direct a verdict against him.[21]

"Although it must be assumed that these terms will be given different meanings by many courts, they have been adopted by most writers,[22] and it is convenient to make use of them.

"Any attempt to classify cases involving the effect of res ipsa loquitur must necessarily depend upon the interpretation placed on very ambiguous language in the opinions, much of which was written casually, and without thought of the above distinctions. It seems clear, however, that the greater number of courts treat res ipsa loquitur as giving rise to nothing more than a mere permissible inference, which neither creates a presumption, nor shifts any burden to the defendant. This appears to be the view taken in Arizona,[23] Connecticut,[24] Georgia,[25] Iowa,[26] Kentucky,[27] Maine,[28] Minnesota,[29] Mississippi,[30] Missouri,[31] Montana,[32] New Hampshire,[33] North Carolina,[34] Ohio,[35] Oklahoma,[36] South Dakota,[37] Tennessee,[38] Texas,[39] Utah,[40] Vermont,[41] Wisconsin,[42] and the federal courts.[43]

"On the other hand, there are a number of jurisdictions which say that res ipsa loquitur amounts to a presumption, and entitles the plaintiff to a directed verdict unless defendant introduces evidence to meet it. This seems to be the position of Illinois,[44] Indiana,[45] Maryland,[46] New York,[47] Rhode Island,[48] Virginia,[49] and West Virginia.[50]

"There are occasional decisions[51] in many courts supporting the third view, that the ultimate burden of proof is shifted to the defendant, who is required to prove by a preponderance of all the evidence that the injury was not due to his negligence; but this position is adopted consistently only by Alabama,[52] Arkansas,[53] Louisiana,[54] and Pennsylvania.[55]

"In addition to the foregoing, there are a dozen or more jurisdictions in which the language used by the courts is so uncertain or conflicting that it is virtually impossible to say what position

they have taken as to the effect of res ipsa loquitur. The list would seem to include California,[56] Colorado,[57] Delaware,[58] Florida,[59] Kansas,[60] Massachusetts,[61] Nebraska,[62] New Jersey,[63] North Dakota,[64] Oregon,[65] Washington,[66] Wyoming,[67] and the English courts.[68]

"Finally, both Michigan,[69] and South Carolina[70] reject the entire doctrine of res ipsa loquitur in express terms, and say it is not to be given effect, but proceed nevertheless to apply the principle under different names when the situation calls for it.

"All this confusion reigns where there is no evidence before the courts except plaintiff's res ipsa case—that is, the occurrence of the accident under circumstances where accidents ordinarily do not occur without negligence, and defendant's control of the situation. When the plaintiff goes further, and introduces specific evidence of the defendant's failure to use proper care, the problem becomes more complex. It is commonly said that if the facts as to the cause of the accident are disclosed by evidence, nothing is left to inference, there is no room for any 'presumption,' and the doctrine has no application and is not available to the plaintiff.[71] It is also said that the attempt to prove negligence by specific evidence does not destroy the inference normally to be drawn from the occurrence of the accident, or waive plaintiff's right to rely on it.[72] These statements are carried over into questions of pleading, where the plaintiff has alleged specific negligence on the part of defendant in his complaint, and seeks to take advantage of res ipsa loquitur at the trial. No less than four positions have been taken as to whether he may do so.[73] It is said that plaintiff, by pleading the specific allegations, has waived or lost his right to rely on the doctrine;[74] that he may take advantage of it provided the inference of negligence to be drawn supports the specific allegations;[75] that it may be applied provided the specific pleading is accompanied by a general allegation of negligence;[76] and that it is available without regard to the form of the pleading.[77] Missouri has gone off into a controversy as to the distinction between general and specific pleadings, which has filled the courts of that state with cases, and apparently has done nothing to advance the cause of justice.[78]

"Still further complications arise when the defendant offers evidence of his own due care. Quite apart from the question of the burden of proof, it is said that the 'presumption' of res ipsa loquitur is itself evidence, to be weighed against that of the defendant;[79] it is also said that it is not evidence, has no weight whatever, and disappears from the case when the defendant offers substantial evidence in his own favor.[80] There are many decisions to the effect that defendant's evidence, even if uncontradicted, merely carries the issue to the jury;[81] others to the effect that it entitles him to a directed verdict;[82] while at least two courts have expressed the opinion that there is no true case of res ipsa loquitur in which a verdict ever has been directed for the defendant.[83]

"In short, there seems to be no single question as to the procedural effect of res ipsa loquitur on which statements may not be found, in the opinions, on either side.

"All this is rather marvelous. It suggests that there is a notion abroad that words spoken in Latin are somehow transcended, and acquire greater significance than their English equivalents. It suggests that res ipsa loquitur is used in different types of cases to mean different things, and that if the doctrine is to be considered as a unit, there is no such thing. It recalls the late Percy Haughton's observation on the Yale football system, that it was fearfully and wonderfully complicated, and fundamentally foolish.

"If it be supposed that Baron Pollock had said merely, in English, 'the thing speaks for itself,' and that no unweildy 'doctrine' ever had developed, would it not be possible to answer all these questions, without difficulty and without confusion, upon the basis of common sense?

"In the first place, it should be clear that what we are dealing with is nothing more than a matter of circumstantial evidence.[84] Negligence may be proved by circumstances,[85] and in a res ipsa case, since there is no direct proof of negligence, the circumstances are the evidence.[86] When a man is found with his throat cut, and the defendant was the last person seen with him, the defendant's footprints are found leading away from the scene of the crime, and the defendant is found in possession of

a blood-stained knife, together with the deceased's watch and wallet, nothing is said about 'res ipsa loquitur,' but the state's attorney does not fail to tell the jury that the facts cry aloud to high heaven the name of the murderer. When a brick falls upon the plaintiff from a building, whence bricks do not ordinarily fall unless someone has been negligent, and defendant is in full control of the building, the evidence is of no different kind or quality.

" 'When the facts and circumstances from which the jury is asked to infer negligence are those immediately attendant upon the occurrence, we speak of it as a case of res ipsa loquitur; when not immediately connected with the occurrence, then it is an ordinary case of circumstantial evidence.'[87] The ill-starred attempt to distinguish between the two,[88] and to say that one means more than the other, is at the bottom of most of the confusion. In the nature of the proof involved, a res ipsa case does not differ from the ordinary case in which the circumstances indicate that someone must have been negligent, and point to the defendant as the one responsible.

"Circumstantial evidence leads to an inference from the facts in evidence to the ultimate fact. A res ipsa case permits the jury to infer that defendant has been negligent. Does it necessarily do more—does it make the inference compulsory, in the absence of evidence to the contrary? In other words, does it create a presumption? Professor Carpenter argues[89] that if res ipsa loquitur amounts to no more than a permissible inference, there is no point in the requirement of an instrumentality in the exclusive control of the defendant, since it may be inferred from the nature of the accident alone that there has been negligence. The answer would appear to be obvious; the defendant's control of the situation is necessary in order that we may infer negligence, not merely on the part of someone, but on the part of defendant. But a sounder argument may be advanced. If the thing speaks for itself, if the inference is sufficiently strong to induce the court to say that it may be drawn, why permit a perverse jury to refuse to draw it? If the obvious conclusion from the circumstances is that defendant has been negligent, why not direct a verdict for the plaintiff?

"The answer is, that in the usual res ipsa case the inference of negligence is not exclusive, nor is it so strong that we may say as a matter of law that the jury could not reject it. If the defendant's elevator falls while the plaintiff is riding in it, it may be inferred that there has been negligent construction, failure to inspect, negligent operation. But it may also be inferred that there was a defective cable which could not have been discovered by all reasonable care, or that some unavoidable accident has happened to the machinery. Whether one inference is more reasonable than the other is a question which cannot be determined as a matter of law, and must be left to the jury.[90] It is not enough for a directed verdict that the court itself would infer negligence unless it can say that reasonable men could not fail to do so.

"In the simplest res ipsa loquitur case, there is only a permissible inference of negligence. It is significant that many of the jurisdictions which give the doctrine greater effect have been compelled to recognize, under other names, the existence of a type of res ipsa case where there is no more than an inference.[91] The source of the presumption idea is not difficult to trace. It rests largely upon the feeling that all the evidence must be in the possession of defendant, and he should be called upon to explain, under penalty of a decision against him. But it never has been a sufficient defense in a res ipsa case that the defendant has no evidence, and knows no more about the cause of the accident than the plaintiff; and there is no policy of the law in favor of permitting a party who has the burden of proof in the first instance to obtain a directed verdict merely by showing that he knows less about the facts than his adversary.[92] Another explanation lies in the fact that many of the early cases were actions by passengers against carriers, and, by analogy to the cases of damage to goods, it was considered that plaintiff had established his case by proving breach of the contract of safe transportation, and defendant thereafter had the affirmative of the issue as to his own due care.[93] This point of view has merged and become lost in the general 'doctrine' of res ipsa loquitur, and carrier cases now are treated like others,[94] but it has left its mark in many states.

"Thus far we have been concerned with the simplest case. But there are other cases where the inference of negligence from the circumstances is so strong that the jury could not reasonably be permitted to disregard it—where, in other words, the inference amounts to a presumption and unless defendant offers evidence to meet it, a verdict must be directed for the plaintiff. The original case of *Byrne v. Boadle*,[95] where a barrel of flour fell upon the plaintiff from defendant's window, seems to be of this kind. It is difficult to conceive of any reasonable explanation except negligence, and Baron Pollock quite properly said there was a presumption. If a small piece of mortar falls on the plaintiff from defendant's building, it may be that negligence cannot even be inferred; if a brick falls from the same building, an inference may be permitted; but suppose the falling object is an elephant? Could any reasonable jury infer that those in charge had used due care? If a single bottle of Coca Cola explodes, perhaps negligence may not be inferred, since there may have been undiscoverable defects in the glass; if twenty-seven bottles explode, there is an inference of negligent bottling;[96] but suppose a thousand bottles explode? If minute particles of glass are found in a can of spinach, it may be that there is no inference, since they might have escaped even careful inspection; if the pieces of glass are larger, the inference is permissible;[97] but what if the article found in the can is a set of false teeth? In the absence of explanation, is any conclusion possible except that the canner has been at fault?

" 'We can imagine no reason why, with ordinary care, human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless.'[98]—is, after all, something of an understatement; the situation really calls for a presumption.[sic]

"So far as plaintiff's right to a directed verdict is concerned, the effect of a res ispa case must vary according to the strength of the inference of negligence to be drawn from the circumstances in evidence. It may be a permissible inference, or a presumption. A few courts have recognized this,[99] but most of them continue to cram all such cases into one basket, label them 'res ipsa loquitur,' and treat them all as leading to the

same procedural result, whatever that result may be. Confusion is inevitable, and unnecessary. There is no uniform procedural effect of res ipsa loquitur; it means no more than circumstantial evidence, which may be strong or weak, according to the facts of the case.[100]

"Where the plaintiff has introduced specific evidence of negligence, the problem would seem to be no more difficult. Plaintiff is of course bound by his evidence; but proof of specific facts does not necessarily exclude inferences. When the plaintiff shows that he was a passenger on defendant's train, and that the train was derailed, there is an inference that defendant has been negligent, and a res ipsa case. When he goes further, and shows that the derailment was caused by an open switch, he destroys any inference that it was caused by excessive speed or defective construction of the track, but the inference that defendant has not used due care in looking after its switches is not destroyed, but is so strengthened that perhaps it becomes a presumption. To say that res ipsa loquitur does not apply is to say that the weaker inference may be drawn, but the stronger may not. If plaintiff goes still further, and shows that the switch was thrown by an escaped convict with a grudge against the railroad, the last inference is destroyed, and plaintiff has proved himself out of court.[101] It is only in this sense that when the facts are known there is no room for inference, and res ipsa loquitur vanishes from the case. Particularly where plaintiff introduces only slight circumstantial evidence suggesting a definite cause of the accident, it cannot be said that the normal inferences are lost. There is little real dispute about this in the cases; it is only the language of the courts which is confusing.[102]

"When the specific negligence is pleaded in the complaint, the problem is somewhat different. If plaintiff pleads specific allegations, such as failure to close the switch, and proves at the trial a case giving rise to a specific inference supporting the allegation, it seems clear that he ought to have the benefit of the inference, and to that extent res ipsa loquitur should apply.[103] The question is, if he proves no such case, but only the fact of the derailment, whether he should be permitted to

rely on the general inference of negligence—excessive speed, defective track, defective rolling stock, or other unknown cause? This is not a question of evidence, for the inference is there; it is a question of the policy of the court as to the effect of specific allegations in the pleading in limiting the issue.[104]

"If plaintiff pleads only the specific negligence, without general allegations, the general inference does not support the specific pleading. A derailment alone is no proof of an open switch. Even here it is arguable that the essential fact of negligence has been pleaded, and the rest may be disregarded as surplusage.[105] The plaintiff might have pleaded negligence generally;[106] should his attempt to be more specific be penalized by a damaging technical rule? But on the other hand, the defendant has received notice of nothing but the specific claim; he comes into court prepared to litigate only the issue of the open switch. Plaintiff has committed himself definitely to a theory of the facts as to the cause of the accident. In these days of liberal amendments, it is an undue hardship upon defendant to require him to meet inferences based on a theory which is advanced for the first time at the trial. There is a real policy underlying the rule that specific pleadings have the function of limiting proof. Plaintiff should be limited by his allegations, at least in any jurisdiction where a general allegation of negligence would have been permitted to stand in the first instance, and he need not have pleaded specially at all. If more specific pleading is required to begin with,[107] or if the defendant succeeds to a motion to make the pleading more definite,[108] a refusal to apply res ipsa loquitur would be in effect to abrogate the doctrine entirely.

"Where the plaintiff, in addition to the specific negligence pleaded, also alleges negligence in general terms, this reason for excluding the general inference of res ipsa loquitur does not exist. Defendant has at least received notice that plaintiff is not relying exclusively upon the specific allegations, and can scarcely claim to have been surprised or misled. A good attorney will be put upon his guard. It is true that there is an accepted principle of pleading that specific allegations control or limit general ones; but the principle has little reason behind

it where the specific allegations clearly are intended, not in furtherance or explanation of the general pleading, but as additional specific claims over and above the general allegation, and not designed to affect it.[109]  Plaintiff might plead generally in one count, and specifically in another,[110] or he might even plead in the alternative;[111] it certainly is open to him to plead specifically all possible forms of negligence which might be involved in the case, and thereby unduly lengthen and encumber his complaint.  If he elects instead to condense a part of his pleading into a general allegation, he is aiding the court.  Furthermore, plaintiff's attorney may be uncertain whether he has really a res ipsa case; he may feel that he may make his best showing by proving the specific facts, and yet his witnesses may fail him at the trial.  It is a strange rule which discourages him from pleading the best case he has because he may lose the benefit of a weaker one.[112]

"Sometimes it is urged that by pleading specific negligence, plaintiff has admitted that the cause of the accident is within his knowledge, and so is not entitled to rely on res ipsa loquitur.[113]  The assumption is that res ipsa is based primarily upon plaintiff's inability to produce definite evidence—in other words, that an inference should not be drawn in favor of one who has other evidence of the facts.  But there is no such principle of evidence,[114] and the assumption is not borne out by the cases.[115] In any event, if the assumption be granted, it does not follow that the specific allegation of negligence is an assertion of definite knowledge, or anything more than a notice that plaintiff expects to introduce some evidence in support of his claim, which may not be at all conclusive or destroy the general inference.  Where both general and specific negligence are pleaded, the Minnesota rule[116] which permits the plaintiff to rely upon res ipsa loquitur even if he does not prove the specific facts seems less artificial, and more likely to lead to a fair result on the merits.

"The final question, as to the effect of res ipsa loquitur when the defendant introduces evidence that the accident was not caused by his negligence, perhaps has given the most difficulty of all.  The controversy as to whether the 'presumption' has

weight as evidence, and is to be balanced against the evidence of the defendant, [117] arises out of a confusion of terms. It seems clear that a permissible inference is always evidence, has weight as evidence, and remains to be considered by the jury as long as it may reasonably be drawn from all the facts presented. This is merely to say that circumstantial evidence is entitled to consideration so long as reasonable men might base a conclusion on it. On the other hand, a presumption, defined as the plaintiff's right to a directed verdict in the absence of contrary evidence, is defeated when the defendant puts in evidence which will permit the jury reasonably to find in his favor. It is said to be rebutted; more properly, the occasion for it is gone, and it vanishes from the case. A presumption is a rule of law, to be applied by the court, and it cannot, by definition, be determined by the jury.[118]

"But every presumption necessarily includes an inference. Presumptions are based upon inferences drawn from common human experience, and in most cases have developed historically from permissible inferences.[119] The presumption is the legal effect to be given to the inference in the absence of contrary evidence; but the inference must reasonably be there, or there can be no presumption, and even the legislature cannot create one.[120] When the presumption disappears because of evidence which will permit the jury to find otherwise, the inference remains behind. The circumstances which give rise to the inference are still in evidence, and still entitled to consideration.[121]

"In cases where res ipsa loquitur amounts merely to a permissible inference, the inference should have weight so long as the jury may reasonably draw it from all the facts in evidence.[122] Where the inference is so strong as to amount to a real presumption, plaintiff's procedural right to a directed verdict may disappear in the face of defendant's evidence, but the inference remains. The stronger case surely cannot have less effect than the weaker. The circumstances still point to negligence, and the inference is not lost until the defendant puts in evidence which destroys it entirely.[123]

"But to say that the inference shifts the burden of proof, and requires the defendant to produce evidence which will affirma-

tively outweight the plaintiff's case,[124] is to give to circumstantial evidence greater effect than direct evidence could have. The defendant is required to do no more than to introduce evidence which, if believed, will permit the jury to say that it is as probable that he was not negligent as that he was.[125] The question is largely academic, since few if any cases are ever evenly balanced; but the inference is nothing more than an element which the jury may consider in determining whether plaintiff has sustained his burden by a preponderance of all the evidence in the case.

"When the defendant in turn seeks a directed verdict, he is not entitled to it so long as the jury may reasonably find for the plaintiff. This means that he must produce evidence which will destroy the possibility of an inference of negligence, or so completely contradict it that the jury could not reasonably accept it. Naturally the evidence necessary to do this will vary with the strength of the inference. It takes more of an explanation to justify a falling elephant than a falling brick, more to account for a hundred defective bottles than for one. If the defendant proves definitely by uncontradicted evidence that the accident was caused by some outside agency over which he had no control,[126] that it was of a kind which commonly occurs without negligence on the part of anyone[127] or that it could not have been avoided by the exercise of all reasonable care,[128] it would seem that the inference of negligence is no longer permissible, and the verdict should be directed for the defendant. Defendant has overthrown plaintiff's res ipsa case by showing that it is not a res ipsa case. The essential elements upon which the inference is based—defendant's exclusive control, the probability that the accident would not have occurred without negligence—have been removed.

"But if defendant merely offers evidence of his own acts and precautions amounting to reasonable care, it seems more difficult to justify a directed verdict in his favor. The fact remains that the accident has happened, and that such accidents ordinarily do not occur without negligence. The defendant testifies that he used due care to insulate his wires—but the current escaped, and current does not escape through proper insulation.[129]

He testifies that he inspected his chandelier—but it fell, and properly inspected chandeliers do not fall.[130] He says that he drove carefully—but the bus went into a ditch, and carefully driven vehicles do not do so.[131] There is enough in the way of common human experience to permit the jury to say that defendant's witnesses are not to be believed, that the care used was not enough, that upon all the evidence no better explanation of the occurrence is to be found than defendant's negligence. Even though it be the rule that uncontradicted testimony must be accepted, still the defendant's evidence is contradicted by the normal inference to be drawn from the circumstances.[132] Perhaps it is not entirely impossible that evidence of due care may be so conclusive as to require a directed verdict,[133] but in all but the most unusual cases it should be denied.[134]

"In Minnesota, the question was presented in interesting fashion in *Swenson v. Purity Baking Co.*[135] Plaintiff found a larva of a Mediterranean flour moth in a loaf of bread baked by defendant. Defendant's evidence described in detail defendant's plant, the process of manufacturing bread, the apparatus used, the care taken to keep the plant clean and to avoid such an occurrence, and the fact that the plant had been passed by public food inspectors. It appeared that defendant bought only the best grade of flour, and sifted it through a number of small mesh screens, through which the larva could not have passed. 'Uncontradicted evidence described the measures taken to keep foreign substances of any nature from getting into the bread,' and apparently every reasonable precaution was taken. Upon this evidence, the court affirmed a directed verdict for the defendant, saying that, 'How this larva became embedded in the loaf of bread is a mystery.'

"With deference to the learned court, and recognition that opinions may differ, it may be suggested that there is no great mystery. The larva got into the bread in defendant's bakery; it could have come from nowhere else. It got in because the defendant's process of manufacture permitted it to do so. It is a matter of common human experience that worms do not get into bread in properly managed bakeshops. The presence of the larva is itself important evidence that something has

gone wrong with the defendant's system. It might lead a reasonable man to conclude that defendant's witnesses are not entitled to belief, that the precautions described were in this instance not faithfully carried out, that the whole truth has not been told.[136]   As the defendant's evidence approaches absolute proof that the larva could not be there at all, it becomes more obviously contradicted by the fact that the larva is there. Should the jury not be permitted to consider the inference that if defendant's evidence were true there would have been no worm?

"All of these questions seem to be capable of solution without real difficulty.   The trouble lies in the Latin formula.   Res ipsa loquitur may be convenient shorthand for designating a particular kind of case.   But so long as its procedural effect is surrounded by the prevailing uncertainty, its use can do little to clarify and much to confuse the issues of a case.   It is used in different senses, to denote evidence of different strength; it means inference, it means presumption, it means no one thing—in short it means nothing.   Perhaps its most unfortunate result is to suggest that it is something separate and apart from ordinary circumstantial evidence, and that if the technical requirements for a res ipsa case cannot be met, negligence cannot be inferred.[137]   The phrase means nothing more than 'the thing speaks for itself.'   Why not say so instead?   Along with res gestae and other unhappy catchwords, the Latin tag should be consigned to the legal dustbin.

" 'It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussion.   It does not represent a doctrine, is not a legal maxim, and is not a rule.'[138]."

I submit that where the facts are without conflict the question is one of law and not of fact. *Georgia Cas. Co. v. Martin,* 157 Ga. 909, 910 (122 SE 881).   Under the rule of circumstantial evidence the courts have followed this rule in both civil and criminal cases without shortcircuiting the law by means of the escape hatch of asylum under the metaphysical argument that the burden of proof provisions of "preponderance" and "beyond a reasonable doubt" precluded supervision of jury verdicts in-

volving undisputed circumstantial evidence. The rule of res ipsa loquitur should be relegated to the ash heap, and the general rules of circumstantial evidence should be applied in all cases based on circumstantial evidence. Where a prima facie case is made and the explanation of the occurrence as to the showing of ordinary care is within the power of the defendant the evidence should require a verdict against the defendant, nothing else appearing. If the defendant shows ordinary care he should be acquitted even if the cause of the unusual event is not shown. No jury verdict should be beyond the power of an appellate court to reverse unless there is a conflict in the evidence including an inconsistency between the inference demanded from testimony (such as the presence of a foreign substance) and facts showing the exercise of ordinary care. Where all of the evidence is circumstantial and undisputed and without conflict the question is one of law and not of fact. The rule that a jury may apply the rule or not in its exclusive election without review is contrary to the general rule of circumstantial evidence and puts the rights of parties beyond the realm of judicial control. See special concurrence in *McCarty v. National Life &c. Ins. Co.*, 107 Ga. App. 178, 186 (129 SE2d 408); and dissent in *Macon Coca-Cola Bottling Co. v. Crane*, 55 Ga. App. 573, supra, and cases cited in *Code Ann.* § 110-104, catchwords "Demand verdict." "There is no absolute presumption of negligence in any case under our law." *Chenall v. Palmer Brick Co.*, 117 Ga. 106, 108 (43 SE 443). Treating a jury verdict as conclusive in a res ipsa case violates this solemn ruling as well as the State and Federal Constitutions. The rule as to the statutory application in cases of railroads and bailees and maybe others is that the prima facie presumption of negligence may be overcome as a matter of law. Under res ipsa this is not true. The basic principles are supposedly the same. The results are absurd under res ipsa loquitur and the differences are irreconcilable. Something ought to be done about the incongruous situation. See Prosser on Torts, 2 Ed. #43, p. 211.