## 47577. ATLANTA COCA-COLA BOTTLING COMPANY v. ERGLE.

QUILLIAN, Judge. Lizzie Ergle brought suit against the Coca-Cola Bottling Company, alleging that as a result of the defendant's negligence she was injured by pieces of glass in a bottle of Coca-Cola from which she drank. Succinctly stated, the facts giving rise to cause of action are as follows. On July 4, 1970, Mrs. Lizzie Ergle, her husband and grandchild stopped at Jones Grocery Store in Stone Mountain, Georgia. Mr. Ergle went inside the store and removed a bottle of Coca-Cola from a cooler which was located across the aisle from the cash register. He paid for the drink and then handed the bottle to his wife, Mrs. Ergle, after opening it and rubbing his hand over the mouth of the bottle several

times. Mrs. Ergle drank from the coke bottle, sensed a burning sensation in her mouth and spat the Coca-Cola out to find that there were glass particles on her tongue and in her mouth.

Upon the trial of the case, the defendant moved for directed verdict in its favor at the close of the plaintiff's evidence and at the close of all the evidence. Both motions were overruled. The jury returned a verdict for the plaintiff in the sum of $8,500. Thereafter, the defendant moved for a judgment notwithstanding the verdict or in the alternative for the grant of a new trial. Both these motions were overruled and the defendant appealed to this court.

There are 5 enumerations of error, one of which deals with admission of certain evidence,while the other 4 concern whether the evidence sustained the verdict because of the plaintiff's alleged failure to prove a prima facie case. *Held:*

1. The 5th enumeration of error complains of the admission into evidence of testimony by a witness for the plaintiff that one night she found a sponge curler in the bottom of a Coca-Cola bottle. The defendant contends that this evidence was designed to impute bad conduct to the defendant and in violation of the principle that "similar acts or omissions on other and ' different occasions are not generally admissible to prove like acts or omissions at a different time and place." *Flint Explosive Co. v. Edwards,* 84 Ga. App. 376, 389 (66 SE2d 368); *Seaboard C. L. R. Co. v. Clark,* 122 Ga. App. 237, 239 (176 SE2d 596).

At the time the evidence was introduced, counsel for the defendant interposed an objection by stating "this line of questioning is not relevant and I object to it." Our appellate courts have consistently followed the rule that "an objection to evidence on the sole ground that it is irrelevant is not such an objection as would be reversible error to overrule." *Hogan v. Hogan,* 196 Ga.

822 (1) (28 SE2d 74). See *Brown v. State,* 122 Ga. App. 59 (176 SE2d 240); *Isley v. Little,* 219 Ga. 23, 28 (131 SE2d 623). In view of the objection here made, we cannot hold that the trial judge erred in admitting the evidence in question.

2. The appellant contends that the evidence in this case was utterly insufficient to merit the application of the doctrine of res ipsa loquitur. The essentials of that doctrine have been set out as follows: "(1) the injury must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Richmond County Hospital Authority v. Haynes,* 121 Ga. App. 537, 541 (174 SE2d 364). See *Chenall v. Palmer Brick Co.,* 117 Ga. 106, 109 (43 SE 443).

(a) Although it is urged in defendant's brief, "this Court does not now have before it an occurrence which was so unusual that it logically bespoke negligence by The Atlanta Coca-Cola Bottling Company," this contention is answered by the holding of *Atlanta Coca-Cola Bottling Co. v. Shipp,* 41 Ga. App. 705, 706 (154 SE 385), and cases cited therein which applied the doctrine of res ipsa loquitur to a situation involving a Coca-Cola bottle containing pieces of glass.

(b) We thus reach the principal argument of the defendant which is predicated on the rationale of such cases as *Payne v. Rome Coca-Cola Bottling Co.,* 10 Ga. App. 762 (73 SE 1087); *Atlanta Coca-Cola Bottling Co. v. Burke,* 109 Ga. App. 53, 59 (134 SE2d 909); *Kennedy v. Friedman,* 123 Ga. App. 105 (179 SE2d 566); *Friedman v. Kennedy,* 227 Ga. 722, 725 (182 SE2d 761). As stated in *Kennedy v. Friedman,* 123 Ga. App. 105, 107, supra, the doctrine of res ipsa loquitur is applicable only "when it is shown that all persons

through whose hands the bottle has passed were free from fault, and that the condition of the bottle and its contents had not been changed since it left the defendant's possession."

Of course, the evidence must authorize the jury to find that the Coca-Cola bottle was in the same condition when opened by the plaintiff as it was when it left the defendant. However, "the evidence need not be conclusive, and only enough is required to permit a finding as to the greater probability . . . If there is evidence permitting a reasonable inference that the condition of the bottle had not changed since it left the manufacturer's control, res ipsa loquitur may be applied." *Macon Coca-Cola &c. Co. v. Chancey,* 216 Ga. 61, 69 (114 SE2d 517). The evidence need not utterly negate the possibility of involvement by third persons or extraneous causes as is contended by the defendant.

The evidence introduced in this case closely parallels that found in *Macon Coca-Cola &c. Co. v. Chancey,* 216 Ga. 61, supra. In that case the court found (p. 68): "There was evidence offered by the plaintiff that the owner of the store bought the Coca-Colas sold in his store from the defendant, that deliveries were made three times per week, that the ice box sat under an awning in front of and adjacent to his store; that the owner locked it at night and at all times when he left the store; that the Coca-Colas sat in racks and were taken from the racks and placed in the box at night; that they were laid flat on their sides; that either the owner or his employee, Henry Bell, filled the box each night; that this was the usual and customary routine followed in handling Coca-Colas; and that there was a turnover of the owner's Coca-Cola stock each week. The plaintiff testified that she drove up to the store, stopped her car near the ice box, asked Henry Bell, an employee of the store who was near the box, to give her a Coca-Cola; that he reached into the box, got the Coca-Cola out,

opened and handed it to her. In answer to, 'was it a full Coca-Cola?' she answered that 'It looked just like any other Coca-Cola I've ever bought,' that it had a cap on it, and that Bell opened it and handed it to her." In *Chancey* the point was made that the failure of Henry Bell to testify constituted a missing link in the evidence but the court held that the evidence was sufficient to support a finding that the bottle was in the same condition.

In the case sub judice, at the time of the incident in question, the Atlanta Coca-Cola Bottling Company delivered its product to the Jones Grocery Store once per week. From testimony elicited from Mary Ann Jones, the daughter of the owner of the store, who regularly worked at the store and was working on the day in question, the usual custom was for the delivery man to leave about 18 cases of the product upon each visit depending upon the number of cases remaining from the previous delivery. No records were kept to indicate when a particular case has been delivered and Miss Jones admitted that the Coca-Cola could have been there at least two weeks. Miss Jones normally filled the cooler although her brother did perform this task at certain times. When bottles of Coca-Cola were delivered to the Jones Grocery Store they were placed by the route man, either in a wooden display box outside the store or in a room in back of the store. The outside box was kept locked over night although during the day "sometimes it was, sometimes it wasn't." Customers occasionally removed Coca-Cola from this outside box. The box was in view from inside the store. The store itself was locked at night and was never left unattended. With regard to the store room in the rear, other distributors of drinks and of other types of products went into that store room to leave their goods. This room was locked all the time except for deliveries. Miss Jones admitted that on some occasions when putting

coke bottles in the cooler two or more bottles might strike each other or "clank" together. If this happened she would not remove the bottle from the stock unless it was leaking or otherwise obviously damaged. The bottle in question showed no signs of outside damage.

In *Dr. Pepper Bottling Co. v. Harris,* 112 Ga. App. 360, 362 (145 SE2d 288), relied upon by the defendant, this court found: "It was not proved that the cooler in which the plaintiff, himself the retailer, kept Dr. Peppers for sale, both in the top from which customers obtained bottles by coin operations, and in the storage compartment in the bottom of the cooler, was ever kept inside a closed area, or that it was ever locked if left outside a place of business not operated 24 hours a day." As pointed out above, here the store was not left unattended and was locked at night and the outside box was locked at night. *Harris,* supra, is therefore not controlling.

Under authority of the *Chancey* case, we therefore find there was evidence permitting a reasonable inference that the condition of the bottle had not changed since it left the manufacturer's control. Hence, the evidence was sufficient to authorize a verdict for the plaintiff. The trial judge did not err in overruling the motion for a judgment notwithstanding the verdict and the motion for new trial.

*Judgment affirmed. Hall, P. J., and Pannell, J., concur.*

ARGUED OCTOBER 4, 1972 — DECIDED FEBRUARY 9, 1973 — REHEARING DENIED MARCH 5, 1973 —

*Hurt, Hill & Richardson, T. Cullen Gilliland, W. Seaborn Jones,* for appellant.

*Guy J. Notte,* for appellee.